# NEW YORK SUPERIOR COURT.

## ISAAC W. EDSALL agt. JAMES BROOKS and others.

" § 1. No reporter, editor or proprietor of any newspaper shall be liable to any action or prosecution, civil or criminal, for a fair and true report in such newspaper of any judicial, legislative, or other public official proceedings of any statement, speech, argument or debate in the course of the same, except upon actual proof of malice in making such report, which shall in no case be implied from the fact of the publication.

" § 2. Nothing in the preceding section contained shall be so construed as to protect any such reporter, editor or proprietor from an action or indictment for any libelous comments or remarks superadded to and interspersed or connected with such report." (*Laws* 1854, *ch.* 130, *p.* 314.)

Independently of this statute, the publication of a judicial trial, fairly reported and without express malice, is not actionable. Both at the common law and under the statute, a *privileged* communication or report of a public official proceeding is libelous if there be proof of *actual malice;* otherwise no action will lie. The law will presume malice in all cases where the publication is *not privileged.*

The plaintiff brought his action against the defendants to recover damages for a libel upon him, published in the newspaper of which the defendants are editors and proprietors, in the following words: " BLACK MAILING BY A POLICEMAN.—Isaac W. Edsall, of the twenty-sixth precinct, city hall police, has been dismissed from the public department, by the commissioners, on charges of blackmail preferred against him by citizens in three distinct cases."

*Held,* that these remarks or comments of the defendants, superadded to their published history of the trial before the police commissioners, were *not privileged*—were unfair and untrue deductions from the facts disclosed on the trial, and for the publication of which they were deprived of the benefits of the statute and were liable in this action.

*New York General Term, March,* 1864.
*Before* MONCRIEF and MONELL, *Justices.*

THIS action was to recover damages for a libel upon the plaintiff published in the New York Evening Express, of which the defendants are the editors and proprietors. The alleged libel is in the following words:

" BLACK MAILING BY A POLICEMAN.—Isaac W. Edsall, of the twenty-sixth precinct, city hall police, has been dismissed from the public department, by the commissioners,

on charges of black-mail preferred against him by citizens in three distinct cases."

The answer of the defendants, after admitting the publication of the alleged libel, sets out the entire article, of which the alleged libel forms a part only. The article alleges that "the first charge is by Cornelius W. Gibson, of Brighton, C. W., who alleges that on the 10th day of April he was in this city, intending to go to British Columbia by the California steamer, and he was induced to go into a Peter Funk auction store, in Cortlandt street, and there purchased a watch that was warranted gold for $120. The watched turned out to be worthless, and, after some very sharp practices by the Funks, the watch being resold, the victim bought an equally worthless one for $75, but succeeded in getting $25 back, for which he had to pay a commission of $6, thus losing $56. The following Monday, the 4th, he applied to the police, and Edsall was sent to work up the case. He brought up the parties before the mayor, and they were discharged on refunding the money. Gibson then gave Edsall $5 for his trouble.

" Amos C. Yeomans, also a Canadian, made an affidavit that he was caught in the trap by the Peter Funks, and cheated out of $59 by the same process as his friend Gibson, and at the same place; that on applying to the police Edsall was detailed to attend to the case, and succeeded in recovering the money for him, and he, Yeomans, made him a present of $4.

" In answer to these charges the officer stated on his trial that after he had recovered the money for the parties they pressed him to take the money as a present, when he said that policemen were not allowed to take any gratuity without permission from the board of commissioners; they still pressed him, and he took the money conditionally, intending to deposit it with the commissioners preparatory to receiving their permission. He was very busy all that

day, and could not call on the commissioners. He also stated that on the same afternoon sergeant Cleary and officer Doyle, of the same precinct, called on Gibson and Yeomans and induced them to make the above statement before the chief clerk.

"Commissioner Acton stated on the 18th, two days after the complaint was made, and after Edsall had had notice of trial, the $9 was deposited by him with the commissioners.

"There was another affidavit sworn to by John W. Allen, who had been cheated on the 27th of March last by the Peter Funks out of $50. Edsall recovered the money for him, and he paid him $5 for his trouble. On being shown this affidavit, Edsall became quite indignant, and said: 'I deny that in toto. I never had anything to do with Mr. Allen's case, to my recollection, and I deny taking any money from Mr. Allen. These were the only cases where I have had money tendered me (referring to the cases of Yeomans and Gibson.) I admit I received the money in these cases to appropriate it in accordance with the rules of the department.'

"On the book of captain Silvey, of the twenty-sixth precinct, appears the following entry under date of March 27th:

'Officer Edsall recovered $48 from No. 1 Park row, for John W. Allen, of Portland, Me., settled by the mayor.'

"This seemed conclusive to the commissioners; and Edsall was immediately discharged from the department.

"Officer John Cronk, of the Broadway squad, has been selected by mayor Opdyke in the place of Edsall, and has been transferred to the mayor's office."

The answer further alleges that charges were preferred against the plaintiff before the said commissioners, a trial had, and the plaintiff was, by the judgment or decision of the said police commissioners, dismissed from the said department; and that the publication was and is, in all re-

spects, a just, fair and impartial account or statement of the charges, trial and dismissal of the plaintiff from the police department, by a legally constituted public judicial tribunal ; and that the printing and publishing of which is in all respects privileged, and was published with good motives and for justifiable ends.

Upon the trial the defendants gave in evidence a copy of the record of the proceedings before the police commissioners, upon the trial of the plaintiff upon the charges preferred against him. The charges were the same as those stated in the *Express* article and the plaintiff was removed from office. The plaintiff was charged with violation of the rules and regulations of the police department.

At the close of the evidence the justice dismissed the complaint.

From this judgment the plaintiff appealed.

A. SANDFORD, *for appellant.*
C. LAWTON, *for respondent.*

By the court, MONELL, J. Independently of the statute of 1854 (*Laws of* 1854, *p.* 314), the publication of a judicial trial, fairly reported and without express malice, is not actionable. The statute is not, therefore, in aid of the common law, but a mere legislative enactment of it. While the statute protects the editor of a newspaper from an action, for a fair and true report of any judicial, legislative or other public official proceeding, except upon proof of actual malice, it expressly withholds its protection for any libelous comments or remarks superadded to or interspersed or connected with such report. Both at the common law and under the statute, a privileged communication or report of a public official proceeding is libelous if there be proof of actual malice; otherwise no action will lie. The only distinction, therefore, between a privileged report and one that is not privileged, is in the

honest purpose or evil design with which it is made and published; and the law will presume malice in all cases where the publication is not privileged.

The libel complained of in this action is contained in the prefatory remark or syllabus which is prefixed to the report of the proceedings before the commissioners of police. It is " Blackmailing by a Policeman," and states that the plaintiff has been dismissed from the police department by the commissioners on charges of "black mail preferred against him by citizens in three distinct cases." If, then, these superadded remarks are in themselves libelous, and not a just, fair and true deduction from the proceedings had before the commissioners (which the defendants undertook to report and publish), the defendants are deprived of the benefits of the statute, and are liable in this action.

The charges preferred against the plaintiff, and for which he was subjected to a trial, resulting in his removal from office, were that he had improperly received money for his services, rendered in the performance of his duty. The proof to establish these charges was, that after being detailed to investigate complaints of frauds committed by mock auctioneers, and having succeeded in recovering the amounts of which the parties had been defrauded, he accepted, as a voluntary gift, from the persons whose money he had recovered, in one case $4 and in two other cases $5 each.

The plaintiff stated on his trial that he received the money conditionally, intending to deposit it with the commissioners, preparatory to receiving their permission.

Although the members of the metropolitan police are prohibited from sharing, for their own benefit, in any present, fee or gift, for police service, yet the board of police are authorized by statute (*Laws* 1860, *p.* 456, § 65) for meritorious and extraordinary services, rendered by a member of the police force in the due discharge of his duty, to permit

such member to retain, for his own benefit, any reward or present tendered him therefor; and it is made cause of removal for a member to receive a reward without giving notice thereof to the board.

The offence, therefore, is not in receiving the reward, but in omitting to give notice to the board; and the cause of the plaintiff's removal from office was in neglecting to notify the board that the gratuity had been received by him.

The guilt or innocence of the plaintiff of the charges preferred is not involved in the question now before us. It is sufficient that he was, by a competent authority, adjudged to be guilty; and the publication of the " proceedings " · before the commissioners is protected.

I have no difficulty in determining that the comments of the defendants upon the charges against the plaintiff, disconnected from the report of the trial, were libelous. Any publication which is calculated to injure the character of a person, or to degrade him in the public estimation, is libelous. (*Weed* agt. *Foster*, 11 *Barb.* 203.) To charge a public officer with " black mailing," and to assert that he has been dismissed for that cause, was calculated to degrade and bring him into disrepute, resulting in injury to his character with the public. " Black mail " (from *maille*, French, signifying a small coin) is defined to be a certain rent of money, coin, or other thing paid to persons upon or near the borders, being men of influence, and allied with certain robbers and brigands, to be protected from their devastation. (*Wharton's Law Lexicon*, 101.) Substantially, we now attach the same meaning to the term. In common parlance, and in general acceptation, it is equivalent to, and synonymous with, extortion—the exaction of money, either for the performance of a duty, the prevention of an injury, or the exercise of an influence. It supposes the service to be unlawful, and the payment involuntary. Not unfrequently it is extorted by threats,

or by operating upon the fears or the credulity, or by promises to conceal, or offers to expose, the weaknesses, the follies or the crimes of the victim. There is moral compulsion, which neither 'necessity, nor fear, nor credulity, can resist.

It cannot be doubted, I think, that the term " black mailing" is invariably regarded as an unlawful act; and though, from its indefiniteness and comprehensiveness, the offence is not classified as a distinct crime, nevertheless, it is believed to be criminal, and, to charge a man with "black mailing," is equivalent to charging him with a crime.

The complaint against the plaintiff was not of a crime. He had not violated any law. He had not extorted money by threat or promise. He had received a voluntary gift, and the penalty of his neglect, to notify the board, was visited upon him by his removal from office.

Under the facts of this case, I cannot persuade myself that the defendants made either a fair or a truthful deduction from the charges against the plaintiff; nor of the course which led to his removal from office. I do not impute to the defendants any evil design or malignant intent to defame the plaintiff. They may and most probably did intend to do no more than to fairly characterize the offence charged; but they were unfortunate in the use of words conveying a different meaning; and however proper it may be to urge these considerations in mitigation of damages, the defendants must be held responsible for the injury which the law presumes the plaintiff has sustained.

In *Thomas* agt. *Croswell* (7 *John. R.* 264), the alleged libel was contained in a newspaper account of a legislative appointment, the court (SPENCER, J.) say " there is no *dictum* to be met with in the books, that a man, under the pretense of publishing the proceedings of a court of justice, may discolor and garble the proceedings by his own

comments and constructions, so as to effect the purpose of aspersing the character of those concerned."

In *Stanley* agt. *Webb*, in this court (4 *Sandf.* 21), the article complained of was headed "Extorting money to hush up the complaint," and then followed a history of the proceedings before the magistrate. The court held the heading not to be privileged. So in *Clement* agt. *Lewis* (3 *Brod. and Bing.* 297), the heading to an article, "Shameful conduct of an attorney," was held not to be privileged. It was superadded to an account of proceedings in the insolvent debtors' court.

Our conclusions are that the comments of the defendants superadded to their history of the trial before the police commissioners are not privileged—are unfair and untrue deductions from the facts disclosed on the trial, and for the publication of which the defendants are liable in this action.

We are therefore of opinion that the judgment should be reversed, and a new trial granted.

Ordered accordingly.