·deny. The only question therefore presented upon this appeal is whether the facts of this case place it outside the general rule.

Prior to the time of the commencement of this action, all the defendants were ignorant of Taylor's wrongdoing. The forgery of the ·checks for $2,400, of course, did not in reality diminish the debt of the defendant bank to the defendant executors. The party defrauded by those forgeries was the defendant bank, and it alone had a claim .against Taylor for the amount of the forgeries. When Taylor subsequently deposited with the defendant bank the sum of $2,400 to the credit of the executors of Adderton, the effect of the deposit was not to increase the claim of the executors against the bank by the .amount of that deposit, but to repay to the bank the amount that Taylor had fraudulently obtained from it. This was undoubtedly the intent of Taylor in making the deposit. He owed the executors nothing. He owed the bank $2,400. The form that the transaction took is not controlling. Taylor had defrauded the bank so deftly that it was not aware of its loss. When he made restoration, it was necessary that he should make it in such form that it would not expose his original crime. But, as already said, though the form did not represent the true nature of the deposit, the purpose was certain. The defendant executors could ·not recover from the defendant bank the amount of the deposit, for it was not intended to be made for their benefit. In fact, the whole question is narrowed to this: Where one person defrauds another so skillfully that the party defrauded is ignorant of his loss, and restitution is made so adroitly that it does not disclose the original offense, does any different rule ·obtain from a case where one confesses his fault, and openly makes restitution? We apprehend there can be no distinction between the two cases, and that the very statement of the question precludes the possibility of but one answer. The judgment of the learned referee was therefore correct.

The special term directed that separate bills of costs be allowed the defendants. We think that this direction was unauthorized. This was an action in equity, where the costs were in the discretion of the court. By section 1022, Code Civ. Proc., where the whole issues in an action are referred, the award of costs can be only made by the referee.

The judgment appealed from should be modified so as to direct that the defendants recover but one bill of costs, and, as modified, ·affirmed, with costs. All concur.

---

LAWYERS' CO-OPERATIVE PUB. CO. v. WEST PUB. CO.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. LIBEL—PRIVILEGE—JUDICIAL PROCEEDINGS—REPORTS.
   One whose copyright has been infringed may publish a fair report of a judicial decision enjoining such infringement, though it censure the person guilty thereof.
2. SAME—HEADLINES—WHEN PRIVILEGED.
   Headlines prefixed to a report of a judicial proceeding. are privileged, when they are a fair index of the matter contained in the report.

3. SAME—CONSTRUCTION OF PUBLICATION.
  In determining whether headlines prefixed to a judicial report are a fair index, they and the matter contained in the report must be construed together.

4. SAME—SCOPE OF HEADLINES—"GENERAL DIGEST."
  One volume of a serial publication known as the "General Digest," and each volume of which is known by the same name, having been adjudged an infringement of copyrights of the West Publishing Company, that company published on the covers of its advance sheets a notice stating that "a volume" of the General Digest had been adjudged an infringement of its copyrights, and referred to another page, where it published an extract of the decision holding one volume of the serial an infringement. This was preceded by a few comments, in which it was stated that the court had just rendered a decision against a stated volume of the General Digest, and preceding this were the headlines: "The General Digest Piratical." "The Circuit Court of Appeals, in a Test Case, Finds the General Digest Piratical, and Grants a Permanent Injunction." *Held,* that the headlines were a fair index of the report of the decision, and hence they were not libelous.

Action by the Lawyers' Co-Operative Publishing Company against the West Publishing Company. A verdict was directed for defendant, and plaintiff filed exceptions, which were ordered to be heard by the appellate division in the first instance. Exceptions overruled.

[Statement by the Court.]

This action was begun May 19, 1897, to recover damages for the publication of an alleged libel. The plaintiff is a domestic corporation located at Rochester, N. Y., and engaged in publishing law books, among which is a work known as the "General Digest," which from 1888 to 1895, inclusive, was published annually, and since the latter date has been published semiannually. This work digests the reported decisions of the supreme court of the United States, of the courts of the several states of the United States, and of the courts of England and of Canada, and is copyrighted. The defendant is a foreign corporation, located at St. Paul, Minn., which in 1887 began, and has since continued, the publication annually of a work known as "The American Digest," which digests the reported decisions of the supreme, circuit, and district courts of the United States, and of the courts of the several states and territories of the United States, and is copyrighted. This digest is published in monthly numbers, designated "Advance Sheets," which are distributed to subscribers throughout the United States. The defendant for several years has also been, and now is, engaged in publishing the Supreme Court Reporter, Federal Reporter, Atlantic Reporter, Northeastern Reporter, Southeastern Reporter, Southern Reporter, Northwestern Reporter, Southwestern Reporter, and Pacific Reporter, which are copyrighted. These Reporters are published in weekly numbers, designated "Advance Sheets," which are distributed to subscribers throughout the United States. In 1892 the Lawyers' Co-Operative Publishing Company published the seventh volume of its General Digest; and in December of that year the West Publishing Company filed a bill in equity against the Lawyers' Co-Operative Publishing Company in the United States circuit court for the Northern district of New York, wherein it is alleged that the Lawyers' Co-Operative Publishing Company had, by publishing volume 7 of the General Digest, violated the copyrights obtained by the West Publishing Company for the American Digest and the various Reporters hereinbefore referred to, by taking from them the copyrighted syllabi of the cases reported in said Reporters, and the matter contained in the American Digest. To this bill the Lawyers' Co-Operative Publishing Company interposed an answer. June 6, 1893, the circuit court denied in part an application for an injunction restraining pendente lite the publication and sale of volume 7 of the General Digest; and in July, 1893, the Lawyers' Co-Operative Publishing Company published in the advertising pages of the semimonthly parts of its General Digest the following:

52 N.Y.S.—71

## "THE GENERAL DIGEST.

### "PRELIMINARY INJUNCTION DENIED.

"On Tuesday, June 6, on bringing in of the master's report in the case of West Pub. Co. v. Lawyers' Co-Op. Pub. Co., Judge Alfred C. Coxe, of the U. S. circuit court, refused to grant the preliminary injunction prayed for against defendants' selling General Digest, vol. VII., on ground of piracy, except as to a few paragraphs, which few, being still in controversy, have been replaced by others. * * *"

On the trial of the action it was held that the Lawyers' Co-Operative Publishing Company had unfairly used the syllabi of the Reporters, and the matter of the American Digest, published and copyrighted by the West Publishing Company; and an injunction was granted, restraining, to a limited extent, the publication and sale of volume 7 by the Lawyers' Co-Operative Publishing Company. 64 Fed. 360. From this judgment the West Publishing Company appealed to the United States circuit court of appeals, on the ground that the relief granted was too limited; and on that appeal the judgment was, April 8, 1897, reversed, and the circuit court directed to grant to the West Publishing Company broader relief. 51 U. S. App. 216, 25 C. C. A. 648, and 79 Fed. 756. It was held by both courts that the Lawyers' Co-Operative Publishing Company had violated the copyrights of the West Publishing Company, and that the Lawyers' Co-Operative Publishing Company had, in volume 7 of the General Digest, pirated the syllabi and matter of the copyrighted publications of the West Publishing Company.

In April, 1897, the defendant herein printed upon the first and fourth pages of the covers of the monthly advance sheets of the American Digest, upon the first and fourth pages of the covers of the weekly advance sheets of the Supreme Court Reporter, upon the first and fourth pages of the covers of the weekly advance sheets of the Federal Reporter, upon the first and fourth pages of the covers of the weekly advance sheets of the Southeastern Reporter, and, upon the first and fourth pages of the covers of the weekly advance sheets of the Southwestern Reporter, the following:

### "GENERAL DIGEST PIRATICAL.

"The U. S. circuit court of appeals has just filed a decision in the test case of the West Publishing Co. vs. Lawyers' Co-Operative Publishing Co., finding a volume of the General Digest full of infringements of the copyrights of the complainant. (See fourth cover page.)"

### "WEST PUBLISHING COMPANY VS. LAWYERS' CO-OPERATIVE PUBLISHING COMPANY.

*"The Circuit Court of Appeals, in a Test Case, Finds the General Digest Piratical, and Grants a Permanent Injunction.*

"The United States Circuit Court of Appeals has just rendered a decision in this suit, brought in December, 1892, as a test case against vol. 7 of the General Digest. Judge Lacombe has filed an elaborate opinion, which is likely to be the leading authority on proof of infringement in copyright cases. It will be reported in full in an early number of the Federal Reporter. Meanwhile, as a matter of interest to our subscribers, we quote the following from the opinion, which will show the findings of the court on the merits of the case: 'The situation of the case, then, is as follows: Nearly 6,000 cases published in complainant's pamphlets, with syllabi and footnotes protected by copyright, were digested by persons in the employ of defendant, who repeatedly and systematically made an unfair use of the copyrighted work in order to save themselves the time and labor of original investigation. These unfair users endeavored, so far as practicable, to conceal the fact that such unfair use had been made,—sometimes successfully, sometimes not; and in consequence it is not practicable now to determine, without evidence which they do not offer, in which cases an unfair use had been successfully concealed, and in which no unfair use was in fact made. In such a condition of affairs, where by the misconduct of defendant's employés a part of complainant's copyrighted work has been appropriated by defendant, and so mingled with original matter contained in its publication that no one except its own em-

ployés who did the wrong can segregate the pirated from the original matter, and they do not make such segregation, the whole work, or so much of it as is tainted by the workmanship of the unfair users, should be enjoined and accounted for. * * * The circuit court is further instructed to decree in favor of complainant for a further accounting in accordance with the conclusions hereinbefore expressed.' "

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

William F. Cogswell, for plaintiff.
Walter S. Hubbell, for defendant.

FOLLETT, J. The defendant, having a legal interest in its copyrighted publications, had the right to publish to its customers a true statement of the decision of the United States circuit court of appeals, even though it censured the acts of the plaintiff in publishing its General Digest, and the defendant is not liable for publishing a fair report of such decision. Edsall v. Brooks, 2 Rob. (N. Y.) 29; Id., 17 Abb. Prac. 221, 26 How. Prac. 426; Salisbury v. Advertiser Co., 45 Hun, 120; Townsh. Sland. & L. (4th Ed.) §§ 229, 240; Starkie, Sland. & L. (3d Eng. Ed.) 214, 281; Odgers, Lib. & Sland. (2d Eng. Ed.) 229, 248; 13 Am. & Eng. Enc. Law, 319, 423. This is the rule of the common law, and is quite independent of section 1907 of the Code of Civil Procedure, which relates to newspapers. It is not alleged in the complaint that the publication, in so far as it refers to the seventh volume of the General Digest, is libelous. The only words complained of are the headlines, "General Digest Piratical," and "The Circuit Court of Appeals, in a Test Case, Finds the General Digest Piratical, and Grants a Permanent Injunction." It is urged by the learned counsel for the plaintiff that these words refer to the preceding volumes of the General Digest as well as to the seventh volume, and that by these words the defendant charges, and intended that it should be believed, that all the volumes of the plaintiff's General Digest were piratical, and violations of the copyrights of the defendant. The defendant answers that the publication complained of is a fair report of the decision of the circuit court of appeals, and that the publication refers in express terms to volume 7 of the General Digest. Defamatory headlines are actionable, though the matter following is not, unless they fairly indicate the substance of the matter to which they refer; and such headlines prefixed to a report of a judicial decision or of judicial proceedings are no part of the report, but are, in effect, comments upon it, and are not privileged unless they are a fair index of the matter contained in a truthful report. In determining whether headlines prefixed to a report are fair, they and the matter to which they refer must be construed together. Edsall v. Brooks, supra; Salisbury v. Advertiser Co., supra. In Edsall's Case it was held at circuit, as a question of law, that the headlines complained of were not libelous, and a nonsuit was granted; but on appeal it was held that the headlines and the matter following must be construed together, and, so construed, that the headlines were not justified by the matter to which they referred, that they were libelous, and the judgment en-

tered on the nonsuit was reversed. In Salisbury's Case it was ruled at circuit that the headlines were justified by the matter to which they related, and a nonsuit was granted, which ruling was affirmed on appeal, the court saying:

"The contention on the part of the plaintiff is that the heading of this publication does not necessarily import that it is part of the judicial proceedings, nor does it necessarily appear that it was such in fact. The article is set out in the complaint entire, and it is, in view of the evidence, to be construed as a whole, to ascertain its necessary import and that of its several parts. The heading states a question which, standing alone, might be construed as libelous. But, connected with what follows, it appears to be a question presented by a judicial proceeding."

Under these cases, the question whether headlines are justified by the matter to which they relate is not always a question of fact for the jury. The truthfulness of the report to which the headlines are prefixed is not questioned.

On the first page of the covers of the advance sheets of the American Digest and of the Reporters it is stated in subheadlines, not complained of, that "the U. S. circuit court of appeals has just filed a decision in the test case of the West Publishing Co. vs. Lawyers' Co-Operative Publishing Co., finding a volume of the General Digest full of infringements of the copyrights of the complainant." This is a plain statement that a volume—only one—was piratical, and found to be full of infringements of the copyrights of the defendant. On the fourth page of the covers of the advance sheets of the American Digest and of the Reporters it is stated, immediately after the headlines, that "the United States circuit court of appeals has just rendered a decision in this suit, brought in December, 1892, as a test case, against vol. 7 of the General Digest." Then follow a few lines of comment, not asserted to be libelous, and it closes with an extract from the opinion of the United States circuit court of appeals. By this statement it clearly appears that the article refers only to the seventh volume of the General Digest, and it seems to me that the headlines are a fair index of the truthful report which follows. It is true that the words "General Digest," standing by themselves, might refer to all the volumes of that work, but the term is equally appropriate to any single volume of the work, each volume being so entitled; and, it being explicitly explained in the body of the article that reference is made only to the seventh volume, persons reading the publication would not understand that it was charged that all the volumes were piratical. The plaintiff in this action, when it published the result of the application for an injunction pendente lite, referred in the body of its article to volume 7 of the General Digest, and prefixed to the article the headline "The General Digest." It is clear that the plaintiff did not by its headline intend to include all the volumes of its digest, but to refer simply to the seventh volume; the headline being equally appropriate to a single volume or to all the volumes. The plaintiff, having first used the term "The General Digest" as an index or headline to an article relating to the seventh volume only, ought not to complain that the same term was used as an index by the defendant to a truthful article referring to the same volume. Construing, as we must, the headlines

and the matter to which they refer together, I think the headlines were a fair index to the matter to which they refer.

The plaintiff's exceptions should be overruled, and a judgment ordered on the verdict for the defendant, with costs. All concur.

