granted in other jurisdictions under similar circumstances. Robinson & Co. v. Heuer, L. R. Ch. Div. 1898, vol. 2, 451; Rousillon v. Rousillon, 14 Ch. Div. 351; Carter v. Alling (C. C.) 43 Fed. 208. In the latter case, the court states the rule as follows:

"It seems to me that the rule clearly deducible from all the authorities is that an employer has the right to bind the employé not to go into the employ of a competitor for a reasonable time after his employment terminates, within the territory where the employer seeks his market; and whether such a covenant is reasonable and binding is a judicial question which must depend in each case upon its peculiar facts and circumstances."

It certainly cannot be claimed, upon the state of facts set forth in the complaint, that a restriction upon defendant not to engage with a trade competitor during the term of his employment by plaintiff is unreasonable.

It is claimed that the contract of employment is unenforceable for lack of mutuality. It is true that plaintiff does not by precise words engage to employ defendant for the term specified, but the whole contract is instinct with such an obligation on its part, and there can be no doubt that upon a fair construction it imports a hiring by the plaintiff, as well as an obligation to serve by defendant. Nor does the fact that plaintiff reserves the right to terminate it upon 30 days' notice deprive it of the element of mutuality. Such a clause is frequently inserted in such contracts, and, in view of defendant's violation of a former contract, was not an unreasonable clause to insert here. The defendant's covenant, as we consider, bound him only during the term of his employment. So long as his employment continued he was bound; when it terminated, by expiration of time or by mutual consent or by act of the plaintiff, he became free to engage in whatever occupation he chose. In this sense and to this extent the obligations of the parties were mutual and reciprocal. We are of the opinion that the complaint states a cause of action for equitable relief.

The judgment appealed from must therefore be reversed, with costs, and the demurrer overruled, with costs, with leave to respondent to withdraw the demurrer and to answer within 20 days upon payment of said costs. All concur.

---

MANN v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. APPEAL AND ERROR (§ 102*)—ORDERS REVIEWABLE—DECISION ON DEMURRER.
    No appeal lies from a decision of the court on an issue of law raised by a demurrer to a pleading, but the remedy of the defeated party is to appeal from the judgment entered on the decision.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 688–698; Dec. Dig. § 102.*]

2. LIBEL AND SLANDER (§ 7*)—ARTICLES CONSTITUTING LIBEL.
    A newspaper article charging an individual with being the publisher of a literary work, without connecting a publishing company therewith, and charging that names of persons appearing in the work were forged, etc., charged that the individual either forged the names or aided and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

abetted therein and was guilty of forgery punishable by Pen. Code, § 514, subd. 3, defining forgery in the third degree.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 7.*]

**3. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—PLEADING—SUFFICIENCY.**

A defense pleaded as a complete justification of a libel must allege a justification as broad as the charge constituting the libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 219; Dec. Dig. § 94.*]

**4. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—PLEADING—SUFFICIENCY.**

A defense to a libel charging an individual with the forgery of the names of persons appearing in a literary work, which alleges that the alleged libel is true and which avers the existence of facts showing that the signatures of such persons were used without their authority, is insufficient as a complete justification.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 94.*]

Appeal from Special Term, New York County.

Action by William D. Mann against the Press Publishing Company. From a decision made on the trial of the issue of law raised by a demurrer to the second separate defense contained in defendant's supplemental answer, and from the interlocutory judgment entered on the decision, plaintiff appeals. Appeal from the decision dismissed, and interlocutory judgment reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Albert A. Wray, for appellant.

James W. Osborne, for respondent.

LAUGHLIN, J. No appeal lies from a decision of the court. The remedy of the defeated party is to appeal from the judgment entered upon the decision.

This is an action for libel. The defendant is the publisher of a daily newspaper, known as the New York World. The alleged libel consisted in the publication in the issue of that paper on the 10th day of December, 1905, of the following article:

"Great Names Forged in 'Fads and Fancies.'

"Fac-Simile Signatures of President Roosevelt, Grover Cleveland and Bishop Potter Employed.

"All have Denied Any Connection with Book.

"Col. Mann Declines to Make Any Explanation of Matter to Reporters.

"When Col. Mann, the publisher of Fads and Fancies, sent out solicitors to obtain subscribers at $1,500 upward, he had decided that the book should contain portraits of and reading matter about three distinguished men who were not to be treated as 'coons,' and the following were not asked to pay:

"President Theodore Roosevelt.

"Ex-President Grover Cleveland.

"Bishop Henry Codman Potter.

"A part of the original scheme was that each subscriber should sign his name in each of about one hundred copies. That plan was given up for various reasons.

"The book as it is now being distributed to subscribers has an index, not alphabetical, giving the name of each person whose fads and fancies are the subject of an article, and opposite his name is a fac-simile of his signature.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The obvious purpose is to make it appear that the signatures stand for the subscribers' satisfaction with the sketches and for a testimony that each signer is a bona fide paid-up member of this syndicate of elegant publicity.

"In this table of contents appear fac-similes of the signatures of President Roosevelt, Mr. Cleveland and Bishop Potter."

The learned counsel for the respondent contends at the outset that the demurrer was properly overruled under the rule that a demurrer searches the record and that the complaint fails to state facts sufficient to constitute a cause of action. We are of opinion that this objection is not well taken. The claim made in behalf of the respondent is that the complaint fails to show that the article published charges the plaintiff with the crime of forgery; and in support of that contention it is argued that the forgery charged may have been committed by the board of directors or some officer of the Town Topics Publishing Company, which, it is alleged in the complaint, was the publisher of "Fads and Fancies of Representative Americans," concerning which the alleged libelous article was published. The difficulty with that contention is that the alleged libelous article charges the fact to be that the plaintiff was the publisher of "Fads and Fancies," and it does not in any manner connect the Town Topics Publishing Company therewith. The headlines of the article published charge that great names were forged in the publication known as "Fads and Fancies," and, since it charges that the plaintiff was the publisher of "Fads and Fancies," the inference would be drawn by a reader of average intelligence that the plaintiff either forged the names or aided and abetted in forging the same, and was therefore guilty of the crime of forgery.

The demurrer is upon the ground that the defense to which it relates is insufficient in law upon the face thereof. This defense is pleaded as a "second, further and separate defense, and as an absolute defense, and in justification of the alleged libels set forth in the complaint." The defense then alleges that the alleged libels set forth in the complaint "were and are true, and alleges upon information and belief that it was and is true as follows:" and then a long statement of facts is set forth, many of which are not directly connected with the alleged libelous article and have no direct bearing thereon. It is thus seen that the matter is not pleaded in mitigation, but as a complete justification. The sufficiency of the defense, therefore, is to be tested by the rigorous rule that the justification must be as broad as the charge. If this defense rested with the allegation that the alleged libels were true, it would, of course, withstand the demurrer; but the allegation that the allegations were true is qualified by the statement, in effect, that they were true as therein alleged. The matters therein alleged in this defense show that a literary work or book, entitled "Fads and Fancies of Representative Americans," commonly known as "Fads and Fancies," to which the libelous article relates, was edited, printed, published, and distributed, not by the plaintiff, but by the Town Topics Publishing Company, a domestic corporation of which he was president. It also contains allegations that, prior to the publication of "Fads and Fancies," a denial by President Roosevelt that he gave his photograph for publication therein, "or that he had ever

indirect dealings" with said publication, and a letter written by President Roosevelt to one Mrs. Hampton, stating in substance that he had not authorized the use of his photograph, and that he "gave no authorization for either picture or article, and * * * would very much prefer if nothing whatever about" him appeared, and that he hoped nothing would appear, came to the knowledge of the plaintiff; and that "Fads and Fancies" was published and delivered to the subscribers thereof with the guilty knowledge on the part of the plaintiff that the index thereto, in which it is charged by defendant that the names of President Roosevelt, Ex-President Cleveland and Bishop Potter appeared without their knowledge or authority, "was intended to convey the meaning, and did mean, that each person whose name was in the said list or index was a bona fide paid-up subscriber to the said book, 'Fads and Fancies of Representative Americans,' when, as a matter of fact, there was contained in the said index the names of persons who were not bona fide subscribers, to wit, Theodore Roosevelt, Grover Cleveland, and Henry Codman Potter; that there were contained in the said book also biographical sketches of persons which had not been approved of by the subjects thereof, to wit, Theodore Roosevelt; that the placing in the said list or index of the names and autographs of persons who were not actual and bona fide subscribers to the said book, to wit, the names and autographs of Theodore Roosevelt, Grover Cleveland, and Henry Codman Potter, was done with a guilty knowledge and with a criminal intent, and with the intent to conceal a crime, and with the intent to defraud"; and that the plaintiff, with a view to obtaining the subscriptions to "Fads and Fancies" of J. Pierpont Morgan, George Gould, and others, wrote certain letters to them in which he falsely stated, as an inducement to obtain their subscriptions, that President Roosevelt and Ex-President Cleveland were subscribers to said literary publication, and that by means of such false representations he obtained subscriptions from each of them, and on said subscriptions obtained from each of them "$1,500 and upwards," well knowing that said Roosevelt and Cleveland were not subscribers to "Fads and Fancies," and that the plaintiff, in order to obtain for use in the index of subscribers to "Fads and Fancies" the autograph signatures of said Roosevelt, Cleveland, and Potter, "obtained and reproduced such autograph signatures from some other document, book, or writing than a subscription contract for the said book known as 'Fads and Fancies,'" These are the only allegations contained in this defense tending to connect the plaintiff with "Fads and Fancies" or with the publication thereof.

It is quite clear, we think, that the justification is not as broad as the charge. Moreover, we are of opinion that if the allegations of this defense are susceptible of the construction, which we think they are not, that they connect the plaintiff with all of the things therein alleged to have been done with respect to the publication of "Fads and Fancies," either as a principal or as an accessory, still, the crime of forgery as charged in the alleged libelous article is not shown to have been committed, nor is any crime of forgery shown to have been committed. It is manifest that the alleged libelous article charges par-

ticularly the crime of forging names or signatures, which would be forgery in the second degree, as defined in subdivision 2 of section 511 of the Penal Code, in that the names or signatures were forged in the index to the article with the intent to defraud others by inducing them to subscribe and pay subscriptions for "Fads and Fancies." No name or signature was forged. Certain autograph signatures were obtained, according to the allegations in this defense, and used without authority; but they were genuine signatures. Nor would it avail the defendant if the alleged libelous article could be construed as charging the crime of forgery in the third degree, which is defined in subdivision 3 of section 514 of the Penal Code, as follows:

"(3) Who shall alter, or who shall cause, aid, abet, or otherwise connive at, or be a party to the uttering of any letter, telegram, report of other written communication, paper or instrument, purporting to have been written or signed by another person, or any paper purporting to be a copy of any such paper or writing where no original existed, which said letter, telegram, report of other written communication, paper or instrument, or paper purporting to be a copy thereof, as aforesaid, the person uttering the same shall know to be false, forged or counterfeited, and by the uttering of which the sentiments, opinions, conduct, character, prospects, interests or rights of such other person shall be misrepresented or otherwise injuriously affected."

Assuming, without deciding, that the allegations of the defense in question are such as connect the plaintiff, either as principal or as accessory, with all the facts therein charged, then the forgery, in the most favorable view to be taken of the facts for the defendant, would consist in "uttering" the publication known as "Fads and Fancies," containing an index purporting to have been signed by the individuals named, whose signatures were used without authority, knowing that the same was false in that the index was not signed by them; for on that view of the case there is no allegation in this defense to the effect that the sentiments, opinions, conduct, character, prospects, interests, or rights of individuals named were either "misrepresented or otherwise injuriously affected." The mere fact that they did not sign the index, and that their signatures therein were used without their authority, do not show that their sentiments have been misrepresented or injuriously affected. Upon no theory, therefore, is the defense, as pleaded, a complete justification.

It follows that the appeal from the decision should be dismissed, and that the interlocutory judgment should be reversed, with costs, and the demurrer sustained, with costs, but with leave to the defendant to amend its answer upon payment of the costs of this appeal and of the demurrer. All concur.