DAVID PARIS, Plaintiff, *v.* THE NEW YORK TIMES COMPANY, Defendant.

Supreme Court, Trial Term, New York County, February 9, 1939.

*George Cohen* [*Sanford H. Cohen* of counsel], for the plaintiff.

*Cook, Nathan, Lehman & Greenman* [*Emil Goldmark, Edgar M. Souza* and *Irving Moskowitz* of counsel], for the defendant.

COLLINS, J. The suit is for libel. Two causes of action are advanced, each based on a different publication. The first alleged libel appeared in a headline on August 11, 1933, and the second in the body of an article published on July 2, 1935. Both, however, stem from the same event.

The plaintiff, a lawyer and former Assemblyman, defended his brother in the local Federal court in a prosecution charging conspiracy to defraud. The brother was convicted. In support of a motion for a new trial, affidavits were submitted purporting to have been sworn to and signed by three witnesses who had testified

at the trial. The affidavits recanted the affiants' testimony given on the trial, confessed that such testimony was perjurious, and implicated the United States District Attorney.

The District Attorney charged that the signatures to the affidavits were forged and that the substance of the affidavits was false. An investigation exposed the forgery and established the falsity. The plaintiff's connection with the affidavits was thoroughly inquired into before Judge CAFFEY of the Federal court, after which that judge held the plaintiff in contempt of court for presenting affidavits " without having made inquiry as to their genuineness, other than in the most superficial respect and from a source which he himself repudiates as wholly unreliable, and, through neglect and failure to exercise that care which was owing by him to this court as a member of the Bar, in seeking to interfere with the true administration of justice in this Court." For such professional misconduct the plaintiff was suspended from practice in the Federal District Court for five years. In fixing the punishment, Judge CAFFEY took into consideration that the plaintiff had been animated by affection for his brother.

The offending publications proceeded from this occurrence.

1. On August 11, 1933 an article was published in the defendant's newspaper concerning the contempt proceedings and the result thereof. The headline is:

" DAVID PARIS GUILTY ON FORGERY CHARGE "

The subheadlines are:

" Assemblyman Barred From Practice in Federal Court for Five Years."

" Affidavits Held Forged."

" Judge Finds Three Submitted on Behalf of Convict Spurious — He Upholds Medalie."

The first sentence of the text reads:

" Assemblyman David Paris, an attorney, was suspended yesterday from practice in Federal Court for five years by order of Judge Francis G. Caffey, who ruled that he had been guilty of submitting three forged affidavits to the court."

Then follows an elaboration on the proceedings.

Neither the subheadlines nor the text are complained of. They accurately and truthfully reflect what transpired. The quarrel is with the headline: " DAVID PARIS GUILTY ON FORGERY CHARGE."

Admittedly, the plaintiff was not found guilty *of* forgery. If the headline so stated or implied, it would be libelous *per se*. (*Hotchkiss* v. *Oliphant*, 2 Hill, 510; *Mann* v. *Press Publishing Co.*, 133 App. Div. 29.) And if the headline had untruthfully announced that the plaintiff had been found guilty of contempt of court, such announcement, too, would have constituted a libel *per se*.

Although this headline might have been more precise, if it is read in conjunction with the text it is not inaccurate or misleading. Quite obviously, the headline intended to convey the meaning that the plaintiff was adjudged guilty, not *of* forgery, but of unprofessional conduct bearing on the forgery. The general subject-matter was forgery, the specific charge related to the plaintiff's connection therewith or participation therein.

A headline should be concise, descriptive of the text, and arresting. It should be " a fair index of the matter contained in a truthful report." (*Campbell* v. *New York Evening Post*, 245 N. Y. 320, 328; *Archibald* v. *Press Publishing Co.*, 82 App. Div. 513.)

" The test is whether to the mind of an intelligent man the language used is open to the interpretation sought to be applied to it * * *; and the entire article must be read, including the headlines, in construing it." (*Kloor* v. *New York Herald Co.*, 200 App. Div. 90, 91.)

" In determination whether the headlines are proper and fair they and the article itself must be read together." (*Bresslin* v. *Sun Printing & Publishing Assn.*, 177 App. Div. 92, 94.)

Thus, whilst in determining whether or not a particular publication is libelous " A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced " (*Fleckenstein* v. *Friedman*, 266 N. Y. 19, 23), the heading cannot be separated from the body of the article — they must be read together.

In *Salisbury* v. *Union & Advertiser Co.* (45 Hun, 120) the heading was in the form of a question concerning the plaintiff's conduct. The court said (at p. 122): " The heading states a question which, standing alone, might be construed as libelous. But connected with what follows it appears to be a question presented by a judicial proceeding."

And in *Lawyers' Co-op. Pub. Co.* v. *West Publishing Co.* (32 App. Div. 585) the court took into consideration that an alleged libelous headline was " explicitly explained in the body of the article," and said (at p. 591): " Construing, as we must, the headlines and the matter to which they refer together, I think the headlines were a fair index to the matter to which they refer."

Under section 337 of the Civil Practice Act: " An action, civil or criminal, cannot be maintained against a reporter, editor, publisher or proprietor of a newspaper, for the publication therein of a fair and true report of any judicial, legislative or other public and official proceedings, or for any heading of the report which is a fair and true headnote of the article published."

My conclusion is that reading the headnote and the article together, as is mandatory, and considering the plaintiff's connec-

tion with the charge of forgery, the heading was " a fair and true headnote of the article published." Accordingly, the first cause of action is not sustained. It is dismissed.

2. The second cause of action derives from the mentioning of plaintiff in the publication of July 2, 1935. That article concerns the appointment of Thomas E. Dewey " to conduct an investigation of vice and racketeering as a special deputy assistant before an extraordinary grand jury." The article glowingly recounts Mr. Dewey's peculiar and high qualifications for the task. In reciting his uncommonly successful record in the United States District Attorney's office and as a prosecutor of notorious gangsters and racketeers, the article states: " Mr. Dewey also conducted the investigation which resulted in the disbarment of David Paris, lawyer and member of the Legislature, for submitting forged affidavits."

Of course, reference to plaintiff's " disbarment " was false. Not only was he not disbarred, he was not even suspended, except as to practice in the Federal court.

The defendant argues that the plaintiff's suspension " is so near to the facts as published " as to make the use of " disbarment " substantially justified. Defendant relies upon the principle that " When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." (*Cafferty* v. *Southern Tier Publishing Co.*, 226 N. Y. 87, 93; *Alexander* v. *North Eastern Railway Co.*, 34 L. J. Q. B. 152.)

But a more apposite principle is that " The general rule of construction is that words are to be taken in the sense which is most obvious and natural, and according to the idea that they are calculated to convey to those to whom they are addressed." (*Larsen* v. *Brooklyn Daily Eagle*, 165 App. Div. 4, 5, 6; affd., 214 N. Y. 713; *Cafferty* v. *Southern Tier Publishing Co.*, *supra*.)

It is puerile to contend that suspension in the Federal court for five years is so near to disbarment as to substantially justify the charge of disbarment. Not only was the plaintiff not disbarred, he was not even suspended. The suspension was qualified and limited.

" When an attorney has been disbarred, he has been pronounced unfit for further professional activities." (*Matter of Treadwell*, 175 App. Div. 833.)

An attorney suspended in the local Federal court, if still admitted to practice in the State courts, may yet be admitted to practice before the United States Supreme Court. (*Ex Parte Tillinghast*, 4 Pet. 108.)

The distinction between disbarment and a qualified suspension is not merely " fine and shaded." The distinction is substantial

and vital; it is as fundamental as the difference between temporary and permanent disability.

There was absolutely no justification for the disbarment charge. That the charge is libelous, and libelous *per se*, is plain. The plaintiff is entitled to recover under this second cause.

What, then, are the damages?

The plaintiff's demand for exemplary damages cannot be sustained. The element of malice is absent. There was no wantonness, not even recklessness. Carelessness, yes, particularly in view of the fact that the defendant's " morgue " contained the true facts. Had the defendant more thoroughly consulted its own files it would have ascertained that the plaintiff was not disbarred, but merely suspended from practice in the Federal court for five years. The reporter could not have received the information of disbarment from Mr. Dewey. Though the reporter might have been more careful, I do not perceive such a reckless disregard of the plaintiff's rights as authorizes the imposition of exemplary damages.

As to compensatory damages, the plaintiff asserts that the income from his practice was reduced from around $7,500 a year to about $1,000. But how much of this reduction is attributable to the plaintiff's connection with his brother's conviction in 1933 and how much (if any) to the publication of July 2, 1935, cannot be fathomed from the evidence. It is sheer speculation. Compensatory damages must be predicated on fact; conjecture is not enough.

Before either of these publications, even before the contempt decision, the plaintiff pleaded impoverishment. In an affidavit sworn to November 20, 1933, he stated:

" Deponent is now without financial resources. All his funds have been exhausted. Neither he nor his family have any means nor is any of them in a position to raise money for the minutes or defray the expenses of an appeal.

" During the latter part of the hearings, deponent informed Judge CAFFEY it was impossible for deponent to retain a handwriting expert, although it was important to do so, because of lack of funds. Deponent's counsel, B. F. Lerch, is serving without compensation."

Subsequently, plaintiff swore that the Federal court case " has impoverished him."

To be sure, the plaintiff's plight commands sympathy. But his misfortune is not to be charged to the defendant unless the evidence warrants it. He became impoverished before the publication. No causal connection between the publication and the diminished earnings appears.

More than that, the plaintiff's conduct must be taken into calculation in reckoning the damage which the defendant wrought.

(*Lesser* v. *International Trust Co.*, 175 App. Div. 12; *Bresslin* v. *Sun Printing & Publishing Assn.*, *supra*.)

" A man may be grossly libeled and still his character and reputation may be such that he suffers no injury, or the circumstances under which the libel is published or the slander uttered be such that no substantial damage ought to be given." (*Amory* v. *Vreeland*, 125 App. Div. 850, 854.)

I do not hold that the plaintiff's reputation was not possibly further damaged by the second publication. Conceivably such publication lent aggravation to the harm the plaintiff suffered in consequence of being held in contempt. But he has failed to trace damage to the offending publication. While damages need not be proved with mathematical exactness, the effect must bear a reasonable relation to the wrong. The evidence must satisfactorily link the two. The defendant cannot be assessed with damages it did not cause or be held responsible for a result it did not produce. The rule is declared in *Abell* v. *Cornwall Industrial Corp.* (241 N. Y. 327, at p. 335), thus: " Substantial compensatory damages must be founded upon a finding of substantial injury, and a jury may with equal reason refuse such a finding in a case where it appears that the plaintiff's good reputation could not have been affected by a charge made under circumstances which deprive it of serious weight, as in a case where it appears that the plaintiff's reputation was already so damaged that the charge, even though serious, could not make that reputation much worse."

It is not to be inferred that the court deems that the plaintiff's reputation was so damaged by his association with the Federal court prosecution, and its repercussions, that the publication could not have made it worse. I do hold that the right as a matter of law to damages does not necessarily imply a right to substantial damages. (*Rusciano & Son Corp.* v. *Mihalyfi*, 165 Misc. 932, 942.) The difficulty here is the failure of proof. Did the damage to the plaintiff ensue from the libel or from the true facts? The evidence does not carry the answer. Unfortunately for the plaintiff the burden of proving damage *from the libel* is his. And he has not discharged it.

" Damages given as compensation should be precisely commensurate with the injury." (*Gressman* v. *Morning Journal Assn.*, 197 N. Y. 474, 480; *Fleckenstein* v. *Friedman*, *supra*; *Lanphier* v. *Clark*, 149 N. Y. 472; *Berman* v. *Topics Pub. Co.*, N. Y. L. J. Dec. 23, 1938, p. 2296.)

Having failed to establish damages for which this defendant is responsible, only nominal damages are recoverable. Accordingly, the plaintiff is awarded judgment for the sum of six cents.