# FRANK M. BROWN v. PUBLISHERS: GEORGE KNAPP & COMPANY, Appellant.

### Division Two, July 14, 1908.

1. **LIBEL: Privilege: Extradition: Proceedings Before Governor.** Proceedings before the Governor of another State for the extradition of a citizen of that State to this, charged with having committed a felony in this State, in which the sufficiency of the requisition papers are drawn in question and it is charged that the affidavit upon which they are based is false, are of quasi-judicial character, and if the report of such proceedings, published by a newspaper in this State, was full, fair and impartial, it was privileged.

2. ——: ——: ——: **Perjury: Fair Report..** A publication from a lawyer's brief, falsely charging that plaintiff as prosecuting attorney, in his affidavit upon which the Governor's requisition was based, had committed "deliberate and criminal perjury," is not a fair report, if it does not contain some explanation to show to the apprehension of an ordinary reader that the affidavit was in fact not perjury. A charge of perjury is libelous *per se* and a published report of such a charge made by another, which contains no statement of attending circumstances showing or tending to show that as a matter of fact plaintiff had not committed perjury, is libelous.

3. ——: **Perjury: Defense of Not Guilty.** Where the publication consists of quotations from another who said that plaintiff had committed "deliberate and criminal perjury," it does not suffice as a defense for the publisher to show at the trial that as a matter of fact plaintiff had not committed perjury.

4. ——: ——: **Antidote.** If the reproduction in defendant's newspaper of the charge of an attorney that plaintiff in his official affidavit had committed deliberate and criminal perjury had been a full and fair report of the extradition proceedings out of which the charge grew, and had contained an explanation that the affidavit did not constitute perjury under the laws of Missouri, where it was made, as the Missouri attorneys at the time contended and showed, there might be merit in the contention that the antidote went along wih the poison. But being neither a fair report nor containing an explanation, the publication itself was a charge of perjury.

5. ——: ——: ——: **Accentuation.** The charge of Bowers, the attorney, who represented before the Governor of New York the person for whom the Governor of Missouri had issued a

requisition, was that plaintiff, as prosecuting attorney, had committed "perjury pure and simple" in swearing to a formal affidavit to the effect that at the time of committing said crime said person was present in the county for which plaintiff was prosecuting attorney, and defendant in reproducing the charge said in its newspaper that "Bowers in his brief openly charges Attorney Brown with deliberate and criminal perjury," and the antidote defendant relies on is that it was stated "Bowers' claim that Attorney Brown committed perjury is based on section 101 of the penal code, which says: 'An unqualified statement of that which one does not know to be true, is equivalent to a statement of that which he knows to be false.'" *Held*, that the citation tended to show that Bowers' charge was well founded in law, and instead of being an antidote to the charge of perjury, it emphasized it.

6. ———: Privileged: Extract from Lawyer's Brief. A reproduction of a part of a lawyer's brief, filed over a month after a hearing in a quasi-judicial proceeding, with comments by the publisher and sensational headlines of his own, is not privileged.

7. ———: ———: ———: Fair Report. A report of only so much of the lawyer's brief as reflects on plaintiff's character and integrity, is not a fair report.

8. ———: ———: ———: ———: Untruthfulness Ascertainable. Where defendant newspaper by the exercise of ordinary care and prudence could readily have ascertained that the charge of perjury contained in the lawyer's brief, was not perjury in fact and in law, under the laws of the State where plaintiff made the alleged false affidavit and where, if at all, the offense was committed, it cannot be held that the report was fair and impartial and therefore without malice.

9. ———: ———: ———: ———: Headlines. The report of judicial or quasi-judicial proceedings must be confined strictly to the actual proceedings, and must contain no defamatory observations or comments from the publisher. The publication of extracts from a lawyer's brief filed in a proceeding long after the hearing has closed, prefaced with sensational headlines of the publisher's own choosing, and interspersed with other subheads such as, "Knew it was untrue," is not privileged.

10. ———: ———: ———: In Newspaper. While words reflecting upon the character of an individual, spoken or written in the due course of a quasi-judicial proceeding, are privileged, yet the privilege does not go to the extent of allowing the publication of the slanderous words in a newspaper, even though the publication is made in good faith and as a matter of news. There is a broad distinction between the right of a person, on a

privileged occasion, to utter words reflecting upon the character of another, and the right to publish through the newspaper press any false or defamatory matter contained in such person's speech or address.

11. ———: **Perjury: Wilful: Affidavit: Instruction.** Where defendant reproduced in its newspaper extracts from a lawyer's brief in which he charged that plaintiff in making an affidavit committed "deliberate and criminal perjury" and "perjury pure and simple," it is not error to refuse to instruct the jury that "to constitute an offense under the law the affidavit must be wilfully and corruptly and falsely made, and if the article complained of does not charge, according to its natural import, the plaintiff with wilfully, corruptly and falsely making the affidavit, then the article is not libelous." Words charging another with a crime as heinous as perjury are actionable, although they do not set forth the particulars of the offense in language necessary to make a good indictment. An unqualified charge of perjury is actionable *per se*.

12. ———: **Demurrer.** Where the publication was not privileged and was actionable *per se*, the court should not instruct the jury to find for defendant.

13. ———: **Defamatory Words: Not Denied: Taken as True: Justification: False Issue.** The article reproduced in defendant's newspaper charged that plaintiff had committed perjury and made an affidavit he knew to be false, and the answer admitted the publication as set out in the petition, but denied the allegation that it was made maliciously, and then pleaded that the publication was privileged. The court instructed that "all matters defamatory of plaintiff in the publication complained of (as defendant has not in its answer relied on their truth as a defense) will be deemed by the jury in making up its verdict as false and untrue." Defendant contends that this instruction was too broad, and says that it sought to justify to the extent that plaintiff made an affidavit of facts of which he had no knowledge. *Held*, that the attempt at justification tenders a false issue, and the instruction was not error, though it would have been better had it named the charges constituting the defamatory matter.

14. ———: **Privilege: Ignored in Instruction.** Where the publication was not privileged, the instructions are not erroneous for that they ignore that pleaded defense.

15. ———: **Exemplary Damages: Malice, etc.** The court instructed that "if the jury find from the evidence that defendant published the article complained of in good faith, believing the same to be a proper item of news and a part of the report of occurrences

213 Sup.—42

in the Zeigler extradition, and without malice or ill-will towards plaintiff, and not negligently, or in wanton disregard of plaintiff's rights, then plaintiff is not entitled to recover any exemplary damages herein." *Held*, that defendant has no right to complain of this instruction given by the court of its own motion in defendant's behalf. The charge, being perjury and knowingly making a false affidavit, is actionable *per se*, and implied malice, that is to say, intentional wrong-doing, and in such case exemplary damages are allowable.

16. ———: ———: **Negligently.** Nor is such instruction objectionable because it uses the word "negligently" instead of "grossly negligent." There is no distinction between negligence and gross negligence.

17. ———: **Actual Damages: Actual Injury.** It is not necessary, in order to recover general damages for defamatory words which are actionable *per se*, that the plaintiff should have suffered any actual or constructive pecuniary loss. He is entitled to recover as general damages for the injury to his feelings which the libel has caused, and the mental anguish or suffering which he has endured in consequence thereof.

18. ———: **Damages: Question for Jury.** The question of damages in a libel case is peculiarly within the province of the jury, and unless the award is so unconscionable as to impress the court with its injustice and thereby induce the court to believe the jury were actuated by prejudice, partiality or corruption, it will not interfere.

19. ———: ———: **Excessive.** In this case it is held that a verdict of $5,000 actual damages and $5,000 punitive damages, for the plaintiff, who is a practicing attorney, for the publication of an article charging him with perjury, in defendant's newspaper, which had a circulation of 100,000, is not so excessive as authorizes the court to interfere.

Appeal from Cole Circuit Court.—*Hon. Wm. H. Martin*, Judge.

AFFIRMED.

*Lehmann & Lehmann* and *W. S. Pope* for appellant.

(1) The publication sued upon is not libelous because it is, and appears upon its face to be, part of the report of a legal proceeding, in which the epithets

complained of as libelous were applied by counsel to the plaintiff under circumstances, as disclosed by the publication itself, which showed them to be mere invective and unwarranted by the facts upon which they were predicated. Newell on Slander and Libel, pp. 33, 34; Bridgman v. Armer, 57 Mo. App. 528; Ritchie v. Stenius, 73 Mich. 563; Haynes v. Haynes, 29 Me. 247; Young v. Bridges, 34 La. Ann. 333; Zuckerman v. Sonnenschein, 62 Ill. 115; Van Rensellear v. Dole, I John. Cas. 279; Ayers v. Grider, 15 Ill. 37; Williams v. Cawley, 18 Ala. 206; Kirksey v. Fike, 29 Ala. 206; Kidd v. Ward, 91 Ia. 371. (2) Even though words are used which in themselves impute a crime, still if accompanied with a specification of acts upon which the imputation is based, which shows that no such crime was committed, they are not libelous. Trimble v. Foster, 87 Mo. 49; Hall v. Adkins, 59 Mo. 144; Pasley v. Kemp, 22 Mo. 409; Ogden v. Riley, 14 N. J. L. 186; Allen v. Hillman, 12 Pick. (Mass.) 101; Hollenbeck v. Hall, 72 N. W. 518; Divens v. Meredith, 47 N. E. 143; Van Vactor v. Walkup, 46 Cal. 124; Morehead v. Jones, 41 Ky. (2 B. Mon.) 210; Barnes v. Crawford, 115 N. C. 76; Cramer v. Noonan, 4 Wis. 231; Randall v. News Ass'n, 101 Mich. 561; Lanaw v. Patriot Co., 57 N. W. 734. (3) Where corrupt intent is an essential element of an offense, a charge of the act under such circumstances as negative the corrupt intent is not a charge of the offense. Church v. Bridgman, 6 Mo. 190; Trimble v. Anderson, 79 Ala. 514; Atkinson v. Scammon, 22 N. H. 40. (4) An accusation of perjury is not made by the publication sued upon, because the entire statement shows there was no perjury. Bundy v. Hart, 46 Mo. 460; State v. Higgins, 124 Mo. 640; Nelson v. State, 32 Ark. 192; Gibson v. State, 15 S. W. 118; Alderson v. Auerswald, 80 Mo. App. 370; Pegram v. Styron, 1 Bailey (S. C.) 595; Harris v. Woody, 9 Mo. 115; Schmidt v. Witherick, 29 Minn.

156; Sherwood v. Chace, 11 Wend. 38.    (5) The publication was the report of a legal proceeding made fairly and impartially and without malice and therefore was not actionable.    18 Am. and Eng. Ency. Law, 1043; Newell on Slander and Libel, 544; Kimber v. Press Ass'n (1893), 1 Q. B. 65.    (6) The subject-matter of the publication being one of qualified privilege, malice must be expressly shown.    Newell on Slander and Libel, 391.    (7) Failure to justify the charge of perjury, when it was denied that the charge of perjury was made, does not admit the falsity of all other matters in the publication which the plaintiff may hold to be defamatory.    Walford v. Herald Co., 133 Ind. 372.    (8) Mere negligence in making report of a trial would not warrant the infliction of punitive damages.    Parsons v. Railroad, 94 Mo. 286; Leahy v. Davis, 121 Mo. 227.    (9) The verdict is so excessive that it is manifestly the result of passion and prejudice.    (10) The verdict is plainly against the law and the evidence.

*Edwin Silver* and *J. L. Smith* for respondent.

(1) 1. It is sufficient to make a written or printed publication libelous and actionable *per se* that it is false and tends to expose one to public hatred, contempt and ridicule or to blacken his reputation.    It is not necessary that the publication should charge a crime or indictable offense.    The distinction between oral slander and written slander or libel in the foregoing respect is well recognized in this State.    Nelson v. Musgrave, 10 Mo. 648; Price v. Whitely, 50 Mo. 439; McGinnis v. Knapp & Co., 107 Mo. 131; Ukman v. Daily Record Co., 189 Mo. 378; Manget v. O'Neill, 51 Mo. App. 26.    2. A newspaper is responsible for what it publishes, the same as an individual.    Johnston v. Post-Dispatch Co., 65 Mo. 539; Arnold v. Saying Co., 76 Mo. App. 159; State ex inf. v. Sheppard, 177 Mo.

244; Shekell y. Jackson, 10 Cush. 25; Haynes v. Press
Co., 169 Mass. 512; McDonald v. Woodruff, 2 Dillon
214; 2 Greenleaf on Evidence (16 Ed.), sec. 398; Fitz-
patrick v. Publishing Co., 48 La. Ann. 1135. That
the name of the author of the publication was given
does not relieve the paper. Dole v. Lyon, 10 Johnson
(N. Y.) 447; Hotchkiss v. Oliphant, 2 Hill 510. To re-
peat or publish a slanderous statement is to indorse
it as genuine. Bee Pub. Co. v. Shields, 94 Neb. 1029;
Meyer v. Adams, 1 Mo. App. 329. Nor does the
want of intention to vilify or defame render an ob-
jectionable publication any the  less a libel. Curtis
v. Mussey, 6 Gray 261. Though the want of such in-
tention may be shown in mitigation of exemplary dam-
ages.   Jones v. Murray, 167 Mo. 25.   (2) Words
charging one with having committed perjury are ac-
tionable *per se*.   Newell on Slander & Libel (2 Ed.),
p. 124; Perselly v. Bacon, 20 Mo. 331; Holt v. Turpin,
78 Ky. 433; Bricker v. Potts, 12 Pa. St. 200; Cooley
on Torts (2 Ed.), p. 233 (note); Harris v. Purdy, 1
Stewart (Ala.) 351.   Perjury can be assigned when
the affidavit of a person making it is based simply on
information and belief.   Herring v. State, 46 S. E.
877; Fitch v. Commonwealth, 92 Va. 824; Hughes on
Criminal Law, sec. 1588.  That words are slanderous
*per se* does not depend upon the laws of the  State
where they are spoken, but upon the  law of the State
in which the act is alleged to have taken place.   Du-
fresne v. Weise, 46 Wis. 296; Van Anken v. Westfall,
14 John. (N. Y.) 233.   (3) The publication com-
plained of in this case is not non-libelous on the theory
that "it carries the antidote with the poison." That
the defendant may be within the protection of the
foregoing principle, the publication must show on its
face that the charge is palpably unfounded.   Perselly
v. Bacon, 20 Mo. 331; Deford v. Miller, 3 Penn. &
Watts (Pa.) 103; Fowle v. Robbins, 12 Mass. 498; Car-

ter v. Andrews, 16 Pick. 1.    Where a slanderous charge is made which the unlearned would understand as imputing a crime, the action of slander lies, although in the nature of things such crime could not have been committed.    Kennedy v. Gifford, 19 Wend. 296; Goodrich v. Wolcott, 3 Cowen 239; Morgan v. Rice, 35 Mo. App. 591; Johnson v. Dispatch Co., 2 Mo. App. 565 (affirmed in 65 Mo. 593); Carpenter v. Hamilton, 185 Mo. 603.    (4)  The quotations from the brief of Mr. Bowers and his associates, filed in the Ziegler extradition proceeding before the Governor of New York, are not privileged matter.    A statement in a newspaper of the circumstances of a cause tried in a court of justice given as from the mouth of counsel, instead of being accompanied or corrected by the evidence, is not such a report of the proceedings of a court of justice as a newspaper is privileged to make. Saunders v. Mills, 6 Bingham 213; Rex v. Carlile, 3 B. & A. 167; Rex v. Creevey, 1 M. & S. 273; Com. v. Godshalk, 13 Phila. 875; Hawkins v. Prtg. Co., 10 Mo. App. 174; Edsall v. Brooks, 17 Abb. Prac. 379; Post Pub. Co. v. Moloney, 50 Ohio St. 71; Stanley v. Webb, 4 Sandf. 21; Cooley, Con. Lim. (7 Ed.), p. 637.    The public is not regarded as having such an interest in proceedings embodying defamatory matter as will outweigh the necessity of protecting the character of individuals unless the proceedings are of a legislative or judicial character. Belo v. Wien, 63 Tex. 686.  The publication of a report of a judicial proceeding is not privileged where (as here) it contains intrinsic evidence that it was not published for good motives or justifiable ends.    Saunders v. Baxter, 53 Tenn. 369; Fudering v. Cramer, 53 Wis. 193; White v. Nichols, 3 How. (U. S.) 266.    A person may publish a correct account of the proceedings in a court of justice, yet if he discolors or garbles the report or adds comments or insinuations of his own, aspersing the character of the

parties concerned, he exceeds his privilege and his publication becomes a libel.    Thomas v. Crosswell, 7 Johns. (N. Y.) 264; Dorr v. United States, 195 U. S. 138; Newell on Slander and Libel (2 Ed.), sec. 163. To state that criminal proceedings are about to be taken against the plaintiff, e. g., that the Attorney-General had directed a certain attorney to prosecute him for perjury, is actionable, although the speaker does not expressly assert that plaintiff is guilty of the charge.    13 Am. and Eng. Ency. Law (1 Ed.), 390, note; Roberts v. Camden, 9 East 93; Tempest v. Chambers, 1 Starke 67.    In publishing an affidavit filed in a criminal proceeding, a newspaper made comments which would give an impression that the matters sworn to were probably true.    Held not privileged. Cass v. Times, 27 La. 214.    Garbled extracts and false reports of a privileged communication are not protected by the law under the guise of the freedom of the press.    Arnold v. Sayings Co., 76 Mo. App. 159; Metcalf v. Times Co., 21 R. I. 674; 18 Am. and Eng. Ency. Law (2 Ed.), 1045; Bathrick v. Post Co., 50 Mich. 644; Maclean v. Scripps, 52 Mich. 253; State v. Wait, 44 Kan. 317; Barner v. Dispatch Co., 3 Mo. App. 377; Cowley v. Pulsifer, 137 Mass. 392.    Privilege is a question of law when the facts as to same are undisputed.    Callahan v. Ingram, 122 Mo. 355; Sullivan v. Com. Co., 152 Mo. 268; Jones v. Brownlee, 161 Mo. 258; Wagner v. Scott, 164 Mo. 289; Klinck v. Kalby, 46 N. Y. 431; Farley v. Thalkimer, 49 S. E. 644; Newell on Libel and Slander (2 Ed.), p. 391, sec. 9.    (5) The damages were a proper matter for the jury, and were not excessive.    The extent of the injuries to the person libeled, as well as the malice, need not be specially proved, but may be inferred from the wrongful charges.    Price v. Whitely, 50 Mo. 439; Herman v. Bradstreet, 19 Mo. App. 227; McClosksy v. Pub. Co., 152 Mo. 339.    The condition in life of plain-

tiff, and the number of the members of his family, were proper subjects for the consideration of the jury on the question of damages. Polston v. See, 54 Mo. 291; Clements v. Maloney, 55 Mo. 352; Enos v. Enos, 135 N. Y. 609. So the evidence showing defendant's wealth was a proper matter for the consideration of the jury. Buckley v. Knapp, 48 Mo. 162. Shame and mortification may constitute grievous mental suffering, and are elements of actual damages. Graybill v. DeYoung, 140 Cal. 323; Baldwin v. Boulware, 76 Mo. App. 5; Brown v. Railroad, 99 Mo. 310. Where words impute an indictable offense, no special damages need be alleged. Rammell v. Otis, 60 Mo. 365; Lewis v. McDaniel, 82 Mo. 577. There is no scale for damages in a libel suit; the matter rests wholly with the jury. Minter v. Bradstreet Co., 174 Mo. 447; Sanderson v. Caldwell, 45 N. Y. 406; Gambil v. Schooley, 93 Md. 65. The fact that a publication libelous *per se* was made without any attempt to ascertain its correctness is sufficient to justify a finding that it was wanton or reckless publication. Van Ingen v. Star Co., 37 N. Y. Supp. 114; Rose v. Company, 110 App. Div. (N. Y.) 437. The fact that a libel may not be believed does not excuse the party who publishes it, nor deprive the plaintiff of all recovery except for nominal damages. Bishop v. Journal Co., 47 N. E. 121. "Injury to the feelings as a matter of common experience is one of the most immediate as it is one of the keenest results of libelous article, and may be taken into consideration by jurors, simply from their general knowledge." Butler v. Barrett, 130 Fed. 909; Van Ingen v. Star Co., 37 N. Y. Supp. 114; Merrill on Newspaper Libel, p. 136; Long v. Prtg. Co., 106 Mich. 215.

GANTT, J.—The plaintiff brought this action against the defendant, a corporation, organized under

the laws of this State with a capital stock of $500,000, and the owner and publisher in the city of St. Louis of a daily newspaper known as the "St. Louis Republic." It was alleged that the daily edition of this paper exceeds one hundred thousand per day.

The petition states that on February 2, 1904, and prior thereto, there was pending at the city of Albany, New York, before the Governor of the State of New York, a certain proceeding wherein the Governor of the State of Missouri sought to secure the extradition from the State of New York of one William Ziegler, charged by an indictment theretofore returned into the circuit court of Cole county with the crime and offense of bribery alleged in said indictment to have been committed in said Cole county, State of Missouri. That on February 3, 1904, the defendant, in said newspaper and in its daily edition thereof of February 3, 1904, having reference to the aforesaid extradition proceeding, did wrongfully, wickedly and with malice, print and publish concerning plaintiff herein the following false, libelous and defamatory words and matter in manner and form as follows, to-wit:

"ZIEGLER DARES NOT LEAVE NEW YORK.
"*If he goes to Connecticut home new extradition proceedings may be instituted.*

"ATTACK ON ATTORNEY BROWN.
"*Baking Powder Magnate's Lawyer, in his brief, openly charges Missouri Prosecutor with perjury.*

"Republic special. .

"New York, Feb. 2.—William Ziegler's escape from extradition to Missouri, through the grace of Governor Odell, has left him in a decidedly awkward position. Mr. Ziegler will run a risk, should he leave the jurisdiction of New York State, of being arrested,

should the Missouri authorities continue their efforts to bring him within the jurisdiction of Missouri.

"Mr. Ziegler has a country home in Connecticut and his attorneys are inclined to the belief that Attorney-General Crow will be prepared to requisition the Governor of the New England State for Mr. Ziegler's return, should he take up his residence there even temporarily, which he frequently does.

"Mr. Ziegler's discomfiture, however, is not the only result of the decision handed down by Governor Odell yesterday. The attorneys for the baking powder manufacturer are said to be lying in wait for acting prosecuting attorney Brown of Cole county, should he at any time visit New York. In his brief, Mr. John M. Bowers, one of Mr. Ziegler's attorneys, openly charges attorney Brown with deliberate and criminal perjury, and Mr. Bowers does not hesitate to say that, upon his advent into the State, Brown will be instantly arrested and his indictment for perjury sought for.

### "CHARGE OF PERJURY.

"The language used by Mr. Bowers in his brief is clear. He says: 'This prosecuting attorney of the county of Cole made an affidavit upon which was put in motion the machinery of the Constitution under which Mr. Ziegler's extradition was sought. It was false as to every allegation as to Mr. Ziegler's flight. Mr. Ziegler sent a respectful message to the Governor of the State of Missouri, asking that this prosecuting attorney of the county of Cole be produced before your Excellency to repeat the oath he had made by which the machinery of the law as to extradition had been set in motion. He declined to come and on page seventy-six of the stenographer's minutes of the proceedings before your Excellency, it was openly conceded that he had no knowledge of the matters he swore to in this regard.

" 'What does this mean? We openly charged before your Excellency, upon the hearing, that an official of the State had committed perjury pure and simple upon which he instituted a procedure of·this nature, committed a crime of the highest grade.'

### " KNEW IT WAS UNTRUE.

" 'The one fact which the State of Missouri concedes it had to prove to deprive a citizen of the State of New York of his freedom and transport him to Missouri was that he had been present in that State at a certain time. Mr. Brown, the prosecuting attorney who is to try him, made an affidavit of that fact. Mr. Brown knew it was untrue when he made it. Even if he swore to facts as true of which he had no knowledge, it was perjury.'

"Mr. Bowers' claim that attorney Brown committed perjury is based on section 101 of the penal code, which says: 'An unqualified statement of that which one does not know to be true, is equivalent to a statement of that which he knows to be false.'

### "FURTHER PROCEEDINGS.

"There has been talk to-day to the effect that a· civil action might be taken against prosecuting attorney Brown, but it is highly improbable that any such proceedings will be begun."

That the terms "Brown," "Attorney Brown," "Missouri prosecutor," "Acting Prosecuting Attorney Brown of Cole county," "prosecuting attorney of the county of Cole," "An official of the State," "Mr. Brown, the prosecuting attorney," and "prosecuting attorney Brown," as used and contained in said libelous and defamatory publication, all have reference to and mean plaintiff. That at the times referred to in the said defamatory publication, the plaintiff was the duly appointed and acting prosecuting attorney of the county of Cole, State aforesaid. That defendant pub-

lished, sold and circulated said edition of its news-
paper, to-wit, the St. Louis Republic, containing said
false, libelous and defamatory matter concerning plain-
tiff in Cole county, Missouri, whereby the cause of
action has accrued against defendant, and on plain-
tiff's behalf in said Cole county, and within the juris-
diction of this court, and published and sold and cir-
culated said edition of its newspaper elsewhere in
the State of Missouri and in the States of Arkansas,
Texas, Illinois, Iowa, Kansas, Indian Territory and
elsewhere. That defendant in the manner and by the
means aforesaid did falsely, maliciously and wickedly
publish, circulate and give currency to the charge that
plaintiff had committed, among other offenses, the
atrocious and abominable crime of perjury; that plain-
tiff by the aforesaid wrongful acts of the defendant
corporation has been greatly damaged in his good name
and reputation and in his feelings and estate, and in
his aforesaid relation of attorney at law in the courts
of this State, in his official character as prosecuting
attorney of Cole county aforesaid, and otherwise in
his business pursuits and vocation. Wherefore, plain-
tiff prays judgment against defendant for actual or
compensatory damages in the sum of twenty thousand
dollars and for punitive and exemplary damages in
the sum of twenty thousand dollars and for costs.

The defendant answering admitted its existence
as a corporation, its ownership of the St. Louis Re-
public, and that it made the publication complained of,
and denied everything else in the petition. And then
set up the following special defense: "That at the
time of the said publication there had been pending
and had just closed a proceeding before Hon. B. B.
Odell, then Governor of the State of New York, for
the extradition of William Ziegler, who had thereto-
fore been indicted by the grand jury of Cole county,
Missouri, for the crime of bribery, and for whose ex-

tradition the Hon. A. M. Dockery, then Governor of Missouri, had issued his requisition. That a hearing had been had before the said Governor of New York, to determine whether or not the said Ziegler should be extradited to the State of Missouri for trial. That on said hearing it was claimed by said Ziegler that he was not a fugitive from the justice of the State of Missouri, and that he was not in the State of Missouri at the time when it was alleged that the said crime of bribery was committed by him. That the Governor of New York, upon consideration of the matter, found as contended by and on behalf of the said Ziegler, and refused to issue a warrant for his extradition. That the crime charged against the said Ziegler was bribery of State officials of Missouri in order to influence the legislation of said State, and the indictment of the said Ziegler and the proceedings for his extradition were matters of great public interest and importance, and, throughout the pendency of the same, the defendant made a true and faithful report of the occurrences therein without malice, and as a matter of public interest and importance. That in the article complained of, the defendant published what was said by one John M. Bowers, who was of counsel for said Ziegler in said proceeding, in his brief and argument before the Governor of New York, for the purpose of advising its readers of the position taken in behalf of said Ziegler in said extradition proceedings. That the plaintiff was, at the time the extradition of said Ziegler was applied for, the prosecuting attorney of Cole county, Missouri, and did, on the 3d day of December, 1903, make an affidavit to the Governor of Missouri, which was used and designated to be used as the basis of extradition proceedings against the said Ziegler, in which the said plaintiff swore that the said Ziegler was charged with the crime of bribery committed in the county of Cole, and State of Missouri,

on or about the — day of March, 1901, and further swore that at the time of committing said crime William Ziegler was personally present in said county and State, and that on or about the — day of March, 1901, the said William Ziegler fled from the State of Missouri; and further swore upon belief that the said Ziegler was at the time of making the said affidavit in the city of New York. That the allegations of said plaintiff in said affidavit, to the presence of the said Ziegler in Cole county, Missouri, at the time of the commission of the alleged offense in March, 1901, and as to the flight of said Ziegler from the State of Missouri at that time, were made, not upon belief, but in form unqualifiedly. That upon the hearing before the Governor of New York, the State of Missouri was held to show that said Ziegler was in this State on or about the 19th day of March, 1901, as being about the date of the commission of the offense of bribery; that said Ziegler offered evidence to show that he was not in Missouri at the time, and it was conceded by the attorneys representing the State of Missouri that the plaintiff at the time of the making of the said affidavit had no personal knowledge of the whereabouts of the said Ziegler in the month of March, 1901, and, in fact, the said plaintiff had no such knowledge. That the penal code of the State of New York, section 101, is set forth in said publication. That upon the facts hereinbefore stated, the said Bowers argued in his brief, as quoted in the said publication, that the statement of plaintiff in his affidavit, as to the presence of said Ziegler in Missouri in March, 1901, because made without qualification and without knowledge of the fact, was tantamount to perjury. That this defendant, without malice or ill-will of any kind, published this argument of the said Bowers with the facts upon which it was predicated, as it had published other occurrences and proceedings in the case, as a matter

of legitimate public interest or importance, without in any manner approving or justifying the same, and its publication was a fair and true report of the said argument, and of the facts on which it was predicated, and, with its other publications of reports of occurrences in said extradition proceeding from time to time as the same happened, it made a fair and truthful report of said extradition proceeding from beginning to end, as it lawfully might do.''

The replication was a general denial of the new matter in the answer. The cause came on for trial on the 31st day of May, 1905, and resulted in a verdict and judgment for the plaintiff of $5,000 for actual damages and $5,000 punitive damages. In due time the defendant filed its motions for a new trial and in arrest of judgment, which were heard and overruled, and the defendant has appealed to this court.

On the part of the plaintiff the evidence tended to show that the circulation of the St. Louis Republic was substantially as stated in the petition and that the paper had a large circulation in the Mississippi Valley and had subscribers in nearly all the counties of Missouri, including Cole county and Jefferson City. It is also shown that the capitalization of the defendant company was $500,000, and the president of the company testified that he would not sell his interest in the defendant company at par nor for two or three times that amount. That the witness had no knowledge of any ill-will on the part of the management of the defendant newspaper towards the plaintiff. That he had never had any controversy with the plaintiff, bore him no ill-will and his only feeling was one of sympathy with the officers of this State in their efforts for the extradition of Ziegler. That the editor of the Republic was J. A. Graham, the night and news editor was Homer A. Bassford, the city editor was Mr. McAuliffe, and the business manager was W. B.

Carr. He further stated that the publication was a telegram sent by the New York City Bureau of the Republic, by its correspondent in that city, J. B. Regan.

The plaintiff testified in his own behalf that he had lived in Jefferson City for twenty-four years and during that time had been engaged there in the practice of law. He was appointed prosecuting attorney of Cole county, November 14, 1903, and continued as such until the 15th day of the following February. The publication gave him mental pain and suffering; it was a matter of great annoyance to him, because it brought him into criticism, the people spoke adversely of him. He is a married man with five children. On cross-examination, he stated he never knew William Ziegler, believed he was now dead; that he made the affidavit in the extradition papers to secure the extradition from New York to Missouri; that he did not know personally where Ziegler was in the month of March, 1901, nor where he had ever been at any time of his life; witness did not hear until sometime after March 30, 1903, of the telegram to Governor Dockery asking him to cause witness to attend the hearing of the extradition proceedings in New York; that witness made the affidavit for the requisition of William Ziegler at the request of Attorney-General Crow, who conducted the investigation before the grand jury that returned the indictment against Ziegler, at the request of Attorney-General Crow, and on the information furnished by the latter. Witness felt secure in the request and confidence of his home community and did not believe people would take it seriously. The publication was a matter of great annoyance more than anything else.

With this prima-facie showing, the plaintiff rested.

The defendant at this point offered a demurrer to the evidence, which was overruled.

Thereupon the defendant introduced evidence to the following effect:

Joseph Graham, managing editor of the St. Louis Republic, testified that the publication complained of, and others relating to the Ziegler extradition proceedings, were made as a matter of public interest and concern to the State of Missouri, and that there was no ill-will against Mr. Brown, but on the contrary, the Republic people were entirely favorable to him. On cross-examination, he stated that no attempt was made to verify the statements in the publication complained of by the correspondent at Jefferson City, and there naturally would not be as the publication was made with reference to proceedings in New York. Messrs. Bassford, McAuliffe and Carr, editors and managers of the Republic, all testified that they knew of no malice or ill-will towards Mr. Brown on the part of anybody connected with the Republic.

John P. Regan, the New York correspondent of the Republic, testified that from time to time while the Ziegler extradition proceedings were pending in New York he sent reports of them to the Republic as matters of public interest to the people of Missouri. He did not intend to and did not charge Mr. Brown with perjury, and sent what Mr. Bowers had said of Mr. Brown as something the people of Missouri would be interested in. His sympathies in the matter were with the Missouri attorneys. He got the Bowers brief through the New York Herald. On cross-examination, he said he got the information upon which his reports of the Ziegler extradition was based from various sources, principally the New York Herald and the Brooklyn Eagle. The publication which is the basis of this action was taken from the Brooklyn Eagle.

The deposition of John M. Bowers taken in New York was read in evidence. He testified that he was

one of the counsel for Ziegler in the extradition proceedings before Governor Odell of New York; that he was present at the hearing before the Governor of New York on December 7, 1903. He identified the telegram of November 30, 1903, sent by Ziegler to Governor Dockery, requesting the presence of Brown at the extradition hearing, and said he prepared it, and had it sent. He prepared the brief filed for Ziegler with Governor Odell. He wrote the matters in the brief referring to Mr. Brown; that the statements in the brief as to Mr. Brown were made without malice towards him and as a mere matter of business. The one question of fact which the Governor, upon whom the demand is made for extradition, has the right to try, is as to the presence of the accused in the demanding State at the time of the commission of the offense. The only evidence of any dignity produced at this hearing on behalf of the State was an affidavit of Mr. Brown. On that the Governor of Missouri issued his warrant, and on that warrant, in ordinary cases, the defendant would have been surrendered. That affidavit set the extradition machinery in motion. It became necessary, therefore, to meet it. So he caused Ziegler to send a telegram to Governor Dockery requesting Mr. Brown's presence, but Mr. Brown did not come to New York. The Missouri authorities claimed that these affidavits were matters of form, whereas Ziegler's counsel insisted that they were of the gravest importance. In fact that it would be difficult to find words to describe the gravity of such a crime as making a false affidavit to set extradition in motion, which in the majority of cases would accomplish the purpose. These statements were repeatedly made by him as to the gravity of the offense, and it was charged that the affidavit was false, that Mr. Brown never knew Mr. Ziegler, had never seen him in his life. On cross-examination he stated that the

brief prepared by himself and approved by the other counsel for Ziegler was sent to the Governor of New York, January 11, 1904; that the Governor's decision was made on February 1, 1904; that the question at issue before Governor Odell was whether Ziegler was in Missouri on March 19, 1901; that the quotations from the brief of witness in the article sued on constituted only a portion of the argument on a single point. That witness had not to his knowledge any conversation with the correspondents of the Republic and Globe-Democrat prior to the publication complained of. Outside of the brief, in his argument before Governor Odell he stated that an officer of the State of Missouri had committed perjury pure and simple by instituting this proceeding, and he intimated that if Mr. Brown had appeared before the Governor as a witness and repeated his statement under oath, they might have instituted criminal proceedings in New York. The date of the alleged crime of Mr. Ziegler was finally fixed by stipulation as the 19th day of March, 1901. The date was blank in the extradition proceedings and may have covered the months of January, February and March. The one controverted fact was the presence of Mr. Ziegler in the State of Missouri on the 19th day of March, 1901.

Counsel for the defendant offered the brief of Mr. Bowers in full and the report of the proceedings before Governor Odell was identified as correct and was offered in evidence and is set out in full in the transcript. This report shows that the hearing before the Governor began December 7, 1903, and was had at Albany. E. C. Crow, Attorney-General, and Judge Thomas P. Harvey appeared for Missouri, and John M. Bowers, Delancy Nicoll, Edward Lauterbach, William J. Underwood, John D. Lindsey and James W. Gerard appeared for Ziegler. Mr. Bowers opened the matter before the Governor by a request that the Mis-

souri representatives fix the dates when they claim
Ziegler was in Missouri. The Governor held this to
be essential. General Crow contended that the extra-
dition papers made out a prima-facie case and the
burden was on Ziegler to show that he was not in
Missouri, and that the State was not held to any
precise date, and that constructive presence would be
sufficient. There was much discussion of these ques-
tions. Mr. Bowers, in the course of the discussion,
said: "Mr. Crow knows that if the defendant is taken
into that State they can try him for any act they like,
and do anything they wish to him, and that he has
not the protection ordinarily attached to extradition
treaties. Therefore, sir, if the affidavit filed, which
sets that proceeding in motion, be a piece of perjury,
it is the most wanton crime that it is possible for an
official to commit." After much heated controversy
before the Governor the 19th of March was fixed upon,
under the ruling of the Governor, as the date of the
offense, and the Governor ruled that the Ziegler coun-
sel should introduce their evidence as to whether Zieg-
ler was or was not in the State of Missouri on the 19th
of March, 1901. The State of Missouri then introduced
affidavits that one Daniel Kelly was an agent of Zieg-
ler and that he was in Missouri at the time named and
acting for Ziegler committed the bribery charged in
the indictment against Ziegler. That Ziegler's name
was on the Southern Hotel register in St. Louis, but in
Kelly's handwriting on the date of March 19, 1901.
The State also offered the affidavit of Evelyn Baldwin
to the effect that Ziegler had said to him shortly before
the 19th of March that he was going to Missouri, and
shortly afterwards said he had just come from there.
At the conclusion of the hearing, the Governor granted
the State two weeks in which to file a brief in support
of its contention and Ziegler a week thereafter filed
his brief. The brief filed by Ziegler is the one iden-

tified by Mr. Bowers in his deposition and the one
referred to in the article upon which this suit is based.

It was admitted by the plaintiff that section 101
of the penal code of New York is in the words stated
in the answer and in the publication complained of.
The defendant also offered in evidence further pub-
lications made by the Republic concerning the Ziegler
extradition beginning with November 15, 1903, when
the indictment against Ziegler was returned and end-
ing with the publication complained of on February
3, 1904.

Governor Odell made his decision refusing the
extradition of Ziegler on February 1, 1904. Under the
date of December 8, 1903, two dispatches from Al-
bany of the preceding day gave an account of the hear-
ing before the Governor.

In rebuttal the plaintiff, over the objection of the
defendant, gave in evidence an article from the Brook-
lyn Eagle containing the same extracts from the Zieg-
ler proceedings which are contained in the defendant's
publication.

With this the plaintiff closed the case. The in-
structions in the case will be discussed in connection
with the assignments of error on the part of the de-
fendant.

I. It is insisted on behalf of the defendant that
the publication sued upon is not libelous because it is,
and appears upon its face to be, part of the report
of a legal proceeding, in which the epithets complained
of as libelous were applied by counsel to the plaintiff
under circumstances, as disclosed by the publication
itself, which show them to be mere invective and un-
warranted by the facts upon which they were predi-
cated. It has already been ruled in the companion case
of Brown v. Globe Printing Company, page 611, this
volume, and growing out of practically the same pub-

lication, that the proceedings before Governor Odell for the extradition of Ziegler upon the demand of the Governor of Missouri to answer to an indictment for bribery were of a quasi-judicial character, and if the report published by the defendant was a full, fair and impartial report it was privileged. As the authorities were exhaustively considered in that case, both English and American, we deem it unnecessary to again review them, and content ourselves with the conclusions therein reached.

A fair reading of the alleged libelous publication will show that it did not purport to be a report at all of the proceedings before the Governor of New York. The extradition had been refused, and this article began with a reference to the effect of the proceedings on Ziegler's future movements, his risk in going outside of the State of New York and the probability of the authorities of Missouri taking further steps to bring him to Missouri. The article then proceeds to state that Ziegler's discomfiture is not the only result of the Governor's refusal to extradite him, but the attorneys for Ziegler were said to be lying in wait for the plaintiff, should he at any time visit New York, and then, foreshadowing a prosecution of plaintiff, says: "In his brief Mr. John M. Bowers, one of Ziegler's attorneys, openly charged attorney Brown with *deliberate and criminal perjury,* and Mr. Bowers does not hesitate to say that upon his [Brown's] advent into this State [New York] Brown will be instantly arrested and his indictment for perjury sought for." Certainly this makes no reference to the occurrences at the trial but refers wholly to events transpiring after the extradition had been denied and to threats of Bowers of a prosecution for *"deliberate and criminal perjury."* Then follows the extract from the brief of Bowers in which he says: "He [Brown] declined to come and on page seventy-six of the stenog-

rapher's minutes of the proceedings before your Excellency, it was openly conceded that he had no knowledge of the matters he swore to in this regard. What does this mean? We openly charged before your Excellency upon the hearing that *an official* of a State had committed *perjury pure and simple,* upon which he instituted a procedure of this nature, committed *a crime of the highest grade."* Then the publication is interspersed in heavy type, with these words by the publisher:

"KNEW IT WAS UNTRUE.

"The one fact which the State of Missouri concedes it had to prove to deprive a citizen of the State of New York of his freedom and transport him to Missouri was that he had been present in the State at a certain time. Mr. Brown, the prosecuting attorney who is to try him, made an affidavit of that fact. Mr. Brown *knew it was untrue when he made it.* Even if he swore to facts as true of which he had no knowledge, it was perjury."

Then without quoting further from the brief, the sender of this dispatch says: "Mr. Bowers' claim that attorney Brown committed perjury is based on section 101 of the penal code, which says: 'An unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false.'" Evidently Bowers did not use this language in the heat of passion in an oral argument but committed it to writing deliberately on January 11, 1904, over a month after the hearing on the 7th of December, 1903.

Obviously he considered it matter of serious weight. Now, what fact is stated that robs this charge of perjury of its infamous character? Does the reference to section 101 of the penal code have any such tendency? We think not. It rather accentuates his position. What would the ordinary reader gather from

the whole article? Obviously that plaintiff was charged with deliberate and criminal perjury in swearing to facts he knew to be untrue and if he swore to facts of which he had no knowledge he was equally guilty, and then a section of a penal code is reproduced to sustain that charge. Not a word is said that if this was the whole of plaintiff's offending, as the said affidavit was made in Missouri, it did not constitute perjury, and that the penal code referred to was that of New York which would not govern. View this article in any light, the whole burden of it is that Mr. Bowers had deliberately charged plaintiff with pure and simple perjury in order to get Ziegler extradited from New York to Missouri, and we look in vain for a statement of facts which would show that such a charge was baseless, or which would have restrained the generality of the charge.

The question is what was the apprehension of those who read this charge. In Eckart v. Wilson, 10 Serg. & Rawle (Penn.) 44, the slanderous words were, "You have killed Bob Waters; you have poisoned him and I can prove it," and it was sought to show as a defense that Waters was still alive, but it was rejected. Afterwards, in Deford v. Miller, 3 P. & W. (Pa.) 103, perjury was assigned on a publication stating that plaintiff had filed his affidavit in the court which had become a public record to which there stood opposed the oaths of two respectable men, and saying, "In law it would be called *perjury*." The defense was that the alleged oath was made before the prothonotary in vacation in a matter not determinable before him, and it was insisted it could not be perjury because the oath was extra-judicial, but Chief Justice GIBSON, referring to Eckart v. Wilson, said: "In that case, the plaintiff had been charged with the murder of a living man; in this, he has been charged with perjury in an extra-judicial oath; in the one, the commission of the crime

charged was rendered impossible by matter of fact; and in the other, *it is made so by matter of law;* and if there is any further difference between them, I am unable to perceive it." He then held the publication libelous, citing Charnel's case, Cro. Eliz. 279, in which to an action for saying: "My turkeys are stolen, and Charnel hath stolen them," it was objected that as the speaker of the words was a *feme covert,* and without capacity to be the owner of the things said to have been stolen, it was impossible in law that the charge be true, but the court refused to sustain the objection, because, as it was said, "she had charged him with *stealing;* and if one which hath no horse saith, 'J. S. hath stolen my horse,' this is as great discredit as if he had one, for *every one knoweth not whether he had a horse or not."* In like manner, they who read the publication in the case before us, may not have known whether the oath in which perjury is alleged to have been committed, constituted perjury in law, or not; nor could they be expected to incur the trouble and expense of an inquiry into the fact, granting them competent to determine it on a view of the record. "Words which impute a crime are actionable, not more because they expose the party charged to the danger of being convicted than of being prosecuted, which, even to the innocent, is a grievance; and in every instance where the meaning of what would otherwise have been an unambiguous accusation, has been controlled by circumstances which showed it to be groundless and thus rendered it harmless the controlling circumstances were so mingled with the accusation by the accuser himself as to make the poison carry its antidote along with it." This view of the law was expressly adopted by this court in Perselly v. Bacon, 20 Mo. 330, l. c. 337. Applying these principles to the publication in this case we look in vain for a statement of circumstances by Bowers or defendant that would show to the ap-

prehension of any ordinary reader that the charge of perjury was groundless because of such attendant circumstances disclosed by Bowers or the defendant in reproducing and publishing such charge. There is not a word or line which shows the charge of perjury to be palpably unfounded on the face of it. There is not even to the trained legal mind a mitigating fact stated, save and except the statement volunteered by the defendant's correspondent who sent the dispatch that Bowers based his claim of perjury on section 101 of the penal code which enacted that "an unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false." What penal code is not disclosed. When this section of the code is read in connection with the statement preceding it, "that it was conceded that plaintiff had no knowledge of the matter he swore to in his affidavit," it emphasized the charge. The publication on its face does not even show that plaintiff made the affidavit in Missouri save by the barest legal inference that no one but a lawyer would appreciate. Concede that such an affidavit is and was in fact not perjury in Missouri where it was made and where alone a criminal prosecution on it could be started, no such fact is stated in the publication, and it cannot be maintained that anything less than such a statement would show the charge of perjury to be groundless. It has long been ruled, as shown by the cases already noted, that it would not suffice to show that as a matter of fact plaintiff had not committed perjury under the laws of Missouri, or matter *dehors* the libel itself.

The charge of perjury is actionable *per se,* and there is no statement of attending circumstances in this publication which show or tend to show said charge was unfounded, and accordingly it must be held that this assignment of defendant is not well taken.

II.  Having reached the conclusion that the publication was libelous *per se,* and that there was no such accompanying statement of circumstances as showed the plaintiff could have been guilty of perjury, it is due counsel for defendant to examine the authorities upon which it relies to sustain its contention that the publication contained an antidote for the poison.

In Trimble v. Foster, 87 Mo. 49, the slander was: "He is a thief; he is a d— thief." The answer was an admission of the speaking of the words, but denied that they were spoken falsely and maliciously for the purpose of slandering plaintiff, but because he believed that plaintiff had been guilty of stealing his property. For a more specific answer he states he purchased of plaintiff a farm and plaintiff delivered him possession thereof and prior to speaking the words "the plaintiff unlawfully, and without the knowledge or consent of defendant, entered upon said land, and, by force, took and carried away and converted to his own use, fixtures belonging to said land, and the property of defendant and then in defendant's possession, to-wit: one sidewalk running from the dwelling house on said premises to the privy; also a brick mound, built up in the front yard of said premises for flowers; also, two large grain bins or cribs, which were located in, and a part of, the barn; also, a lot of manure and other things belonging to defendant by reason of the purchase aforesaid and of great value." Of this answer, this court held it was not a plea of justification but only in mitigation. Said the court: "If words spoken amount, of themselves, to a charge of larceny, *yet if accompanied with a* specification of acts upon which the charge is based, which show that no such crime was committed, the party of whom the words were spoken has no cause of action. As, if the words relate to the taking of property not a subject of larceny, they

will not be actionable. But if some of the property alleged to have been stolen was the subject of larceny, the action may be maintained. As, if A should say of B that he stole an acre of land and a horse, the property of A." Because the answer did not specifically state that the "other things" were fixtures, that is to say, were so attached to the land that as between vendor and vendee they were a part of the land and therefore not the subject of larceny, this court reversed the circuit court for holding the same a complete defense. That case supports our conclusion in this, that there is no statement of facts which show that perjury could not have been committed.

Hall v. Adkins, 59 Mo. 144, was an action for slander. The plaintiff was a lessee of certain land from defendant. By the terms of the lease the plaintiff and his co-lessee were to raise a crop of corn on the land and were to pay defendant $475 in money on or before January 1, 1873, or before that time if the crops were sooner sold, "the crop to be security for the payment of said sum, and to be gathered and penned on the premises on or before December 1st, 1872." The defamatory words were, "He is stealing my corn; Aaron Hall stole my corn and is swindling me, and the neighbors are helping him do it." The defendant admitted speaking the words charged, denied they were maliciously spoken and pleaded in justification the truth of the words spoken, and in mitigation of damages, the facts and circumstances relied upon to constitute said stealing and a reference by him to such facts and circumstances at the time of speaking the words. Reply denied the facts relied upon to constitute the larceny and averred no explanation was made by defendant at the time they were spoken and no reference made to such facts and circumstances. The testimony tended to show that plaintiff and defendant had an interview in which plaintiff proposed

to provide other security for the rent so that he might dispose of the corn, but failed to reach an agreement; that plaintiff told several parties he and defendant had had a "fuss" and he intended to take the corn. Before any of the rent was paid plaintiff did take part of the corn in the night without the consent and against the will of defendant and used it to feed plaintiff's hogs. There was a conflict as to whether defendant, at the time of speaking the actionable words, communicated to every person to whom and in whose presence he uttered the words, the circumstances attending the taking of the corn by plaintiff. There was a verdict and judgment for plaintiff and defendant appealed. It was ruled, first, that plaintiff being the owner of and in possession of the corn there was no larceny in his selling or feeding the corn; that as defendant had a lien on the crop, it was a wrongful act but not larceny. The court instructed that the verdict at all events must be for plaintiff, regardless of the other facts pleaded in mitigation and justification. But this court held that while the words were actionable in themselves, yet if the defendant honestly believed that the facts and circumstances attending the taking of the corn constituted larceny, and so believing and without malice uttered the words charged only to those to whom he communicated the facts in his opinion constituting the crime charged and upon which he based the same, thus sending an antidote along with the poison and showing a mistaken view of the law rather than a malicious purpose, the plaintiff could not recover. In that case, if the evidence for the defendant was believed, he had told all the facts upon which he based his charge of larceny. The evidence disclosed plaintiff had wrongfully disposed in the nighttime of corn on which defendant had a lien and this court held that while it was not larceny, yet if defendant honestly believed it to be such and to every

person to whom he made the charge he detailed the facts, then plaintiff could not recover.

If the publication had been a full and fair report of the proceedings before the Governor of New York (which it is not) with the explanation of General Crow and Judge Harvey that the affidavit of plaintiff did not constitute perjury under the laws of Missouri, where it was made, there might be merit in the contention that the antidote went with the poison, but the facts of Hall v. Adkins differ so radically from those in this case, that it constitutes no authority for the publication in this record.

Defendant's proposition of law is well enough and we need not go beyond our own decisions for it, but the facts of this case do not make that law applicable here. The charge of Bowers was that plaintiff had committed perjury pure and simple and defendant reproducing the charge says that "Bowers in his brief openly charges attorney Brown with *deliberate* and criminal perjury," and the antidote now relied on is that Bowers' claim that it was perjury is based on section 101 of the penal code which says: "An unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false." Instead of a statement of facts and circumstances which would have demonstrated it was not perjury and could not be, a citation of a section of a penal code is cited which tended to show Bowers' contention was well grounded in law. In other words, it emphasizes the charge of perjury.

III. But it is insisted it was a privileged report of a legal proceeding, fairly and impartially made, without malice and therefore not actionable. As already said, the publication upon which this action is based is not and does not purport to be a fair and accurate report of the proceedings before the Gov-

ernor of New York for the extradition of Ziegler. It
is a reproduction of a part only of Mr. Bowers' brief,
filed over a month after that hearing had ended, with
comments by the defendant and sensational headlines
of its own. It is not even a report of all of Mr. Bowers'
brief but of an extract only which reflects upon plain-
tiff's character and integrity. Judge COOLEY, in his
Constitutional Limitations (7 Ed.), page 637, states
the rule adopted by most courts on this question: "It
seems to be settled that a fair and impartial account
of judicial proceedings, which have not been *ex parte,*
but in the hearing of both parties, is, generally speak-
ing, a justifiable publication. But it is said that, if a
party is to be allowed to publish what passes in a
court of justice, he must publish the whole case, and
not merely state the conclusion which he himself draws
from the evidence. A plea that a supposed libel was,
in substance, a true account or report of a trial has been
held bad; and a statement of the circumstances of a
trial as from counsel in the case has been held not
privileged. The report must also be strictly confined
to the actual proceedings in court, and must contain
no defamatory observations or comments from any
quarter whatsover, in addition to what forms strictly
and properly the legal proceedings." Upon the same
point, Newell on Slander and Libel (2 Ed.), sec. 163, p.
556, states the rule in this way: "The publisher must
add nothing of his own. He must not state his opinion
of the conduct of the parties, or impute motives there-
for; he must not insinuate that a particular witness
committed perjury. That is not a report of what oc-
curred; it is simply his comment on what occurred, and
to this no privilege attaches. Often such comments may
be justified on another ground—that they are a fair and
*bona fide* criticism on a matter of public interest, and
are therefore not libelous. But such observations, to
which quite different considerations apply, should not

be mixed up with the history of the case.  Lord CAMP-
BELL said: 'If any comments are made, they should not
be made as part of the report.  The report should be
confined to what takes place in court, and the two
things—report and comment—should be kept sep-
arate.' "  In the companion case to this of Brown v.
Globe Printing Company, argued and submitted along
with this cause on practically this same publication,
the opinion in which is handed down to-day, it was
said:  "It has been held that the headlines to the pub-
lication 'are only privileged if they are a fair index
of a truthful report.'  [Stuart v. Press Pub. Co., 83
App. Div. (N. Y.) 467; Lawyers' Co-op. Pub. Co. v.
West Pub. Co., 52 N. Y. Supp. 1120; Hart v. Sun
Printing & Pub. Assn., 79 Hun 358.]  The headlines
were no part of the proceeding before Governor Odell
for the extradition of Ziegler, but were voluntary
statements of the publisher of the libel.  The head-
lines were as follows:

" 'ZIEGLER'S LAWYER CALLS BROWN LIAR.
   " 'ACCUSES HIM OF PERJURY.
" 'Declares if Missourian Visits New York He Will Be
                    Arrested.
" 'Insists Cole County Prosecutor Made Affidavit He
                 Knew Was False.'

"Such headlines were not privileged matter at
common law, and were libelous remarks or comments,
if the matter could be deemed otherwise privileged.
An inspection of them would seem to be sufficient to
demonstrate this fact.  'Their publication in this man-
ner was certainly equivalent to a remark or comment
unnecessary to a fair and truthful report of judicial
proceedings, and likely to raise inferences highly
detrimental to the character and standing of the one
about whom they were printed and published.'  [Dorr

v. United States, 195 U. S. 138.]" In this case the headlines, so far as they affect plaintiff, were, "*Attack on Attorney Brown. Baking Powder Magnate's Lawyer in his brief openly charges Missouri prosecutor with perjury.*" If the headlines in Brown v. Globe Printing Company were not privileged, and we hold they were not, by the same token these headlines are likewise not privileged, and they fall within the condemnation which the law visits upon such unauthorized comment under the claim that they were but a fair report of judicial proceedings. [Hayes v. Press Co. Limited, 127 Pa. St. 642.] In addition to these headlines, the publication contains in its body in large capitals the words, "CHARGE OF PERJURY" and "KNEW IT WAS UNTRUE," and these sensational headings thus interspersed in the article were equally beyond the privilege of the defendant as a publisher.

But there is another equally potent reason why the publication in question was not one of privilege. In Brown v. Globe Printing Co. the authorities, both English and American, are collated, to the effect that it does not follow that because counsel may willfully speak in court as he believes or is instructed, therefore he may publish his speech through the press. [Saunders v. Mills, 6 Bing. 213; Rex v. Creevey, 1 Maule & S. 273; Com. v. Godshalk, 13 Phila. 575; Com. v. Culver, 2 Pa. L. J. 362; Flint v. Pike, 10 E. C. L. 380; Rex v. Lord Abingdon, 1 Esp. 226; Hotchkiss v. Oliphant, 2 Hill 510.]

In Brown v. Globe Printing Co., supra, BURGESS, J., says: "While words reflecting on the character of an individual, spoken or written in due course of a judicial or quasi-judicial proceeding, if pertinent to the subject of the inquiry or relevant to the issue, or in a legislative assembly, by a member thereof, in the discharge of his official duties, are privileged, this

213 Sup.—44

privilege does not go to the extent of allowing the publication of the slanderous words in a newspaper, even though the publication is made in good faith and as a matter of news. The authorities draw a broad distinction between the right of a person, on a privileged occasion, to utter words reflecting upon the character of another, and the right to publish through the newspaper press any false and defamatory matter contained in such person's speech or address. As said in Hotchkiss v. Oliphant, 2 Hill 510: 'The act of publication is an adoption of the original calumny, which must be defended in the same way as if invented by the defendant. The republication assumes and indorses the truth of the charge, and when called on by the aggrieved party, the publisher should be held strictly to proof. If he chooses to become the indorser and retailer of private scandal, without taking the trouble of inquiring into the truth of what he publishes, there is no ground for complaint if the law, which is as studious to protect the character as the property of the citizen, holds him to this responsibility. The rule is not only just and wise in itself, but if steadily and inflexibly adhered to and applied by courts and juries, will greatly tend to the promotion of truth, good morals and common decency on the part of the press, by inculcating caution and inquiry into. the truth of charges against private character before they are published and circulated throughout the community.' " In this case had the defendant exercised ordinary care and prudence it could have readily ascertained that the charge of perjury made by Bowers against the plaintiff was in fact and in law not perjury under the laws of Missouri, where alone, if at all, the offense had been committed. And yet it was sent broadcast throughout the Mississippi Valley and especially in the State of Missouri, where the plaintiff lived and was well known. For the reasons given in

Brown v. Globe Printing Co. we therefore hold that this publication was not a privileged one.

IV. It is insisted by the defendant that the court erred in refusing the 10th instruction requested by the defendant, which is in these words: "Under the laws of Missouri it is no offense simply to make an affidavit to the matter of fact, even though the person making it had no knowledge of the fact, and even though the statement of his affidavit was not in accord with the actual fact, and to constitute an offense under the laws of Missouri the affidavit must be willfully and corruptly and falsely made, and if the article complained of does not charge, according to its natural import, the plaintiff with willfully, corruptly and falsely making the affidavit in question, then the article is not libelous and your verdict should be for the defendant."

The pith of this instruction seems to be that unless the defendant charged the plaintiff with willfully, corruptly and falsely making the affidavit in question then the article is not libelous; that the words "deliberate and criminal perjury" and "perjury pure and simple" "in swearing to facts which plaintiff knew were untrue when he made the affidavit" were not a sufficient charge of perjury so as to be actionable. We are entirely unable to agree to this contention. Words charging another with a commission of a crime as heinous as perjury are actionable although they do not set forth the particulars of the offense in language necessary to make a good indictment. In 18 Am. & Eng. Ency. Law (2 Ed.), 989, it is said: "To render words actionable it is not necessary that they should describe the offense with that precision with which it is necessary to set forth an offense in an indictment, and it is well settled that if the words used to express the

charge are such, in the sense in which they would naturally be understood, as to convey to the minds of those to whom they are addressed, or to the readers of the words, the impression that the plaintiff has committed a crime, the words are actionable.'' Words making a general charge of ''perjury'' are actionable in themselves without any colloquium. [1 Am. Lead. Cas. top page 108, and notes.] Had defendant inserted the substance of this instruction in its article and thereby explaining to the world and its readers that the plaintiff had not been guilty of perjury as charged in Mr. Bowers' brief, its attitude would have been much more favorable at this time, but certainly there was no error in refusing this instruction as the charge in the publication was an unqualified one of perjury, which is actionable *per se.* The court properly told the jury that a publication charging the plaintiff with perjury was libelous, but it also told the jury that they were the final and sole judges whether such publication was in fact libelous and defamatory.

V.   It is insisted the court should have directed the jury to find for the defendant. It will be remembered that the defendant in its answer admits it made the publication complained of, but denied making the same with malice or ill-will and sought to justify upon the ground of privileged publication. The publication charged the plaintiff with the commission of a felony, to-wit, perjury. We have already held that it was not privileged and was libelous *per se.* In McIntyre v. Bransford, 17 S. W. 359, the Court of Appeals of Kentucky said: ''The falsity of defamatory words is presumed, because the law will not presume misconduct in a person. If libelous *per se,* malice is also presumed; and if defendant pleads their truth, he must prove it, or, in the absence of any other defense, respond in damages, at least to some extent. If, how-

ever, their truth be shown, he is not liable, although he may have been actuated by malice." In Childers v. Mercury P. & P. Co., 105 Cal. l. c. 289, it was said: "This publication charged the plaintiff with the commission of a felony. It was false, not privileged, and libelous *per se*. Upon such a state of facts the cause of action for actual damages is conclusively established, and the amount and measure of damages are the only questions left for litigation. In this publication malice in law is not only conclusively presumed, but such malice in fact is implied or presumed as to establish prima-facie the right of plaintiff to exemplary damages. In other words, the existence of malice in fact is sufficiently shown by the publication to make the question an issue before the jury. That exemplary damages may be based alone upon a publication libelous *per se,* we have many authorities from many States," citing, among other cases, Buckley v. Knapp, 48 Mo. 152, in which last-mentioned case it was said: "When slanderous words are spoken, or a libelous article is published falsely, the law will affix malice to them. There is no necessity of proving express malice. [Hudson v. Garner, 22 Mo. 423; Goetz v. Ambs, 27 Mo. 28.]" Under these circumstances we think it is obvious that there is no merit in the proposition that the court should have instructed the jury to find for the defendant. And we think that the assaults upon the third and fourth instructions given for the plaintiff are therefore groundless.

VI. Error is also predicated upon the giving of the 12th instruction, which was as follows: "The court instructs the jury that all matters defamatory of plaintiff in the publication complained of (as defendant has not in its answer relied on their truth as a defense) will be deemed by the jury in making its verdict as false and untrue as respects plaintiff." The conten-

tion is that this instruction is too broad. The defendant admitted the publication in words and figures as set out in the petition, but denied the allegation that it was made maliciously, and then pleaded that it was privileged publication. It now says that it sought to justify to the extent that the publication was true as to the charge that plaintiff made an affidavit of facts of which he had no knowledge. We think this assignment tenders a false issue. The defendant assumes as a basis of its contention that the article charged no more than that plaintiff made an affidavit of facts of which he had no knowledge, and that in its answer it asserted the publication so construed was true, but as we have seen the article charged that the plaintiff had committed *perjury, and made an affidavit he knew to be false,* which is an entirely different proposition, and the court in its fourth instruction submitted these two defamatory charges to the jury, and this 12th instruction when considered along with all the other instructions must be held to have referred to these two defamatory charges. The defendant makes no claim that it justified the charge of perjury, or that plaintiff made an affidavit that he knew to be false. While the court might have better named the two charges as constituting the libelous matter which was admitted by the answer without any attempt of justification thereof, we think the jury could not have been misled as to the issues presented for their determination. As to the other objection to this instruction, that it ignored the defense of privilege, we have already held that it was not a privileged publication and it is not erroneous on that ground.

VII. The second instruction given by the court of its own motion is also assailed. That instruction is in this form: "If the jury find from the evidence that the defendant published the article complained of in

good faith, believing the same to be a proper item of news and a part of the report of occurrences in the matter of the Ziegler extradition, and without malice or ill-will towards the plaintiff, and not negligently, or in wanton disregard of plaintiff's rights, then the plaintiff is not entitled to recover any exemplary damages herein.''

In Buckley v. Knapp, 48 Mo. l. c. 162, it was held by this court that ''in all actions of tort, whether for assault and battery, or for trespass or libel or slander, where there are circumstances of oppression, malice or negligence, exemplary damages are allowed, not only to compensate the sufferer, but to punish the offender.'' The learned counsel for defendant says that ''gross negligence may be the occasion of punitive damages, but mere negligence never is.'' In Reed v. Western Union Tel. Co., 135 Mo. 671, it was held that the distinction between negligence and gross negligence does not exist in this State. In McPheeters v. Railroad, 45 Mo. l. c. 26, this court said: ''There is no difference between negligence and gross negligence, the latter being nothing more than the former, with the addition of a vituperative epithet.'' The authorities on this subject both English and American were fully considered in Reed v. Tel. Co., supra, to which reference is made. A reading of the instruction, we think, will itself answer this objection. It was given in behalf of the defendant and told the jury that ''if the defendant published the article complained of in good faith believing it to be a proper item of news and a part of the report of occurrences in the matter of the Ziegler extradition and without malice or ill-will towards the plaintiff and not negligently or in wanton disregard of plaintiff's rights, then there could be no exemplary damages.'' We think the defendant has no cause to complain of this instruction. The charges of perjury and knowingly making a false af-

fidavit were actionable *per se* and implied malice, that is to say, intentional wrong-doing. In Buckley v. Knapp, 48 Mo. l. c. 161, it is said: "In most instances, where an injury is committed against the person or property of another, the actual intention of the author of the mischief is immaterial. The law considers everyone whose neglect, carelessness and want of due regard for the rights of others occasions injury to them, equally culpable and bound to make reparation to the extent of such injury, as one who wilfully does the mischief. It can make no difference to the party injured whether the injury was occasioned by the wilful act or by negligence or a careless disregard of his rights, and such a consideration ought not to affect his remedy."

VIII. Defendant insists that the verdict is plainly the result of passion and prejudice and is excessive. The allegation of the petition was that plaintiff, by the said wrongful acts and conduct of the defendant, has been greatly injured and damaged in his good name and reputation and his feelings and estate, and in his relation as attorney at law and otherwise in his business pursuits and vocation. And the court instructed the jury that if they found for the plaintiff they would allow as actual or compensatory damages such sum as would fairly and reasonably compensate him for all mental suffering and humiliation suffered by him by reason of the publication of the article aforesaid, and naturally and directly caused thereby, and for all injuries to his good name and reputation naturally and directly caused by said publication. The prayer of the petition may be considered as one for general damages. The action for libel is one to recover damages for injury to a man's reputation and good name; it is not necessary in order to recover general damages for words which are actionable *per se,* that the

plaintiff should have suffered any actual or constructive pecuniary loss. In such action the plaintiff is entitled to recover as general damages for the injury to his feelings which the libel of the defendant has caused, and the mental anguish or suffering which he had endured as a consequence thereof. So many considerations enter into the awarding of damages by a jury in a libel case that the courts approach the question of the excessiveness of a verdict in such case with great reluctance. The question of damages for a tort, especially in a case of libel or slander, is peculiarly within the province of the jury, and unless the damages are so unconscionable as to impress the court with its injustice and thereby to induce the court to believe that the jury were actuated by prejudice, partiality or corruption it rarely interferes with the verdict. In Coleman v. Southwick, 9 Johns. (N. Y.) l. c. 50, Chief Justice KENT said: "The *quo animo* with which the libel was published was altogether a matter for the consideration of the jury; and the circumstances which might tend to aggravate or extenuate the damages, and lessen or increase the degree of malice which the law imputes to the publication of every unjustifiable libel, were no doubt urged to the jury upon the trial. . . . It is not enough to say that, in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries." The learned judge then considered the number of English cases in which the question of the excessiveness of the verdict had been considered. In our opinion this is a case in which the jury were clearly justified in giving both compensatory and punitive damages under well-settled principles of law and considering the character of the plaintiff and the large circulation of the defendant's paper and the degrad-

ing nature of the libel, we do not feel that we would be justified in setting aside the verdict on the ground of its being excessive. After a careful consideration of all the assignments of error, we are of opinion that the judgment must be and it is accordingly affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.